HASKINS *v.* STATE.

Opinion delivered April 25, 1921.

1. CRIMINAL LAW—CORROBORATION OF ACCOMPLICE.—The corroboration of an accomplice in a criminal prosecution is not sufficient if it merely shows that the offense has been committed and the circumstances of it, but it needs only to be of a character and quality which tends to prove the defendant's guilt by connecting him with the crime.

2. CRIMINAL LAW—CORROBORATION OF ACCOMPLICE.—An accomplice's testimony tending to implicate defendant in the commission of a robbery committed at night was sufficiently corroborated by proof that defendant and the witness were seen together, prior to the commission of the crime, and by the fact that defendant's description of the build and dress of the robber corresponded with the testimony of the accomplice.

3. ROBBERY—INDICTMENT—DESCRIPTION OF MONEY.—An indictment alleging that defendant robbed the prosecuting witness of "$98.28, good and lawful money of the government of the United States," was supported by evidence that he was robbed of $95 in greenbacks and $3.28 in silver.

4. CRIMINAL LAW—ALIBI—INSTRUCTION.—An instruction as to the defense of alibi should tell the jury that if, upon a full consideration of the evidence adduced to prove an alibi in connection with the other evidence, they entertain a reasonable doubt of the defendant's guilt, they should acquit him.

5. CRIMINAL LAW—ALIBI—INSTRUCTION.—An instruction in a prosecution for robbery that, to render an alibi effective as a defense, it must cover the period of time during which the offense is shown to have been committed, so as to preclude defendant's presence at the time and place of its commission, *held* correct.

6. CRIMINAL LAW—ALIBI—INSTRUCTION.—An instruction in a prosecution for robbery that, if the evidence in support of the alibi did not explain the whereabouts of the defendant for the period of time covered in the commission of the crime, the jury should not consider any testimony in support of the alibi, was erroneous, as proof tending to establish an alibi, though not complete, may, with other facts in the case, raise doubt enough to cause an acquittal.

Appeal from Faulkner Circuit Court; *George W. Clark,* Judge; reversed.

STATEMENT OF FACTS.

Martin Haskins was indicted, tried and convicted before a jury of the crime of robbery.

Garland Dickens, the victim of the robbery, was a witness for the State. According to his testimony, he was in the city of Conway, in Faulkner County, Arkansas, on the night of the 14th day of October, 1919. Mitchell Kirkpatrick met him and invited him to go down the railroad track a little ways to get some whiskey. They went down the railroad track about three blocks, and just as they crossed a little bridge on the west side of the railroad a man stepped out from behind a big tree and drew a pistol on them, compelling them to put up their hands. Glenn Stephens was walking behind Dickens and Kirkpatrick. The robber took $98.28 from Garland Dickens. Ninety-five dollars of this was in greenbacks

and $3.28 was in silver. The robber then went through the pockets of Kirkpatrick and took what money he had from him. He only went through one of the pockets of Glenn Stephens. The robber weighed about 120 pounds and appeared to be about the build and size of the defendant. He had on tight-legged pants and a long bill cap. The witness did not remember whether or not he had on a sweater. The robbery occurred about 8 or 9 o'clock at night, and it was very dark.

Mitchell Kirkpatrick corroborated the testimony of Dickens about the robbery, but said that he did not notice the size or appearance of the man who robbed them.

Glenn Stephens was also a witness for the State. According to his testimony, he had known Martin Haskins for about eight years, and they planned the robbery two or three days before it occurred. They went to Little Rock and came back on the Sunday night before the robbery occurred on Tuesday night. On Tuesday night Stephens got with Garland Dickens and Mitchell Kirkpatrick and went down the railroad to where Haskins was hiding. Haskins and Stephens had met that afternoon at the laundry where Haskins worked, and planned that they would commit the robbery. They were to divide the proceeds equally. On the night of the robbery Haskins had on a dark pair of trousers and a cap with a long bill. He had a handkerchief over his face. The robbery occurred between 8 and 9 o'clock at night. Other evidence shows that Stephens and the defendant had been seen together coming from Little Rock on the Sunday night preceding the robbery.

On the part of the defendant it was shown that he left the laundry with his uncle about 7 o'clock on the evening of the robbery and went up town with him. A clerk in a drug store testified that he came in there between 7 and 7:30 o'clock that evening and hung up a black sweater and did not get it any more that night. The witness was positive that it was between 7 and 7:30 o'clock that evening when Haskins left his sweater in the drug store.

A cousin of Haskins testified that he came to his house between 8 and 9 o'clock on the evening of the robbery. He stayed about fifteen or twenty minutes and then left in his father's car. He went to his father's house after some music records and brought them back in about fifteen or twenty minutes. He was gone just about the time it would take a person driving at an ordinary rate of speed to go to his father's house and return.

The mother of the defendant testified that he was nineteen years old at the time the robbery was committed and came home to supper a little after 7 o'clock that evening. The father and mother left and went to a relative's house about 8 o'clock. The defendant then came to the relative's house where his father and mother were and arrived there at about 8:30 o'clock in the evening. Some one wanted some music records, and the defendant's father said he would go for them, and Martin then offered to go for them instead of his father and was gone fifteen or twenty minutes when he returned with the records. The robbery had taken place something like a mile from where they were, and it was not possible that the defendant could have participated in the robbery at the time it occurred.

The jury returned a verdict of guilty, and from the judgment and sentence of the court the defendant has duly prosecuted an appeal.

*R. W. Robbins,* for appellant.

1. The court erred in admitting improper and incompetent testimony.

2. The argument of the prosecuting attorney was improper and prejudicial. 141 Ark. 448-9.

3. It was error to give instruction No. 1-A. The court had no right to single out any phase of the testimony and instruct the jury relative thereto. 140 Ark. 529. It was an invasion of the province of the jury.

4. There was a fatal variance between the allegations in the indictment and the proof. Description of the property in an indictment for robbery is required to

be as specific as in larceny. 100 Cal. 437. The indictment did not allege that the money taken was gold, silver or paper money, nor the denomination. The property taken must be described with such particularity that defendant may know of what he is accused. C. & M. Digest, § 2506; 18 A. & E. Enc. Law 1220-1. When a particular description of the property taken is given, or where it is described as unknown to the grand jury, the proof must support the allegations or the variance is fatal. 18 Enc. Pl. & Pr. 122; 115 Ala. 83; 5 Mont. 565.

5. There was no corroboration of the testimony of Stephens, the accomplice. 218 S. W. 197; 50 Ark. 534; 36 *Id.* 117.

6. The verdict is contrary to the evidence and the testimony of the accomplice was uncorroborated. *Supra.*

*J. S. Utley,* Attorney General, and *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

1. Where there is serious doubt in the law as to whether certain proof is or not permissible, the safe rule is to permit it to go to the jury. 10 R. C. L., p. 862; 92 Ark. 728.

2. The remarks of the prosecuting attorney were not improper nor prejudicial, nor did they transcend the bounds of legitimate argument. 58 Ark. 368; *Ib.* 473; 71 *Id.* 623; 81 *Id.* 173; 94 *Id.* 514; 95 *Id.* 321; 100 *Id.* 232.

3. There was no error in the instruction complained of. The defense was an alibi, and the burden was on defendant to establish it. *Hawthorne* v. *State,* 135 Ark. 247. Taking the instructions all together, they state the law, and the case was fairly submitted to the jury. 59 Ark. 422; 58 *Id.* 353.

4. There was no variance between the allegation in the indictment and proof. C. & M. Dig., § 2410, 3014; 4 Words & Phrases, 3146; 83 Ala. 51. *Greenback* is the popular and almost universal and exclusive name applied to United States paper notes. 4 Words & Phrases, 3165; 23 Ind. 21-3; 2 Ga. App. 633; 72 S. E. 518; 43 Iowa 418.

5. No error in giving instruction 1-A. Stephens was an accomplice, and his testimony was sufficiently corroborated. 36 Ark. 117; 50 *Id.* 534; 97 *Id.* 92. Whether a witness is an accomplice or not is a mixed question of law and fact for a jury, and their finding is conclusive. 51 Ark. 115; *Ib.* 189. Corroboration is sufficient if shown by *circumstances* connecting defendant with the crime. 52 Ark. 180; 1 Enc. of Ev., p. 108.

6. The evidence fully sustains the verdict.

HART, J. (after stating the facts). It is earnestly insisted by counsel for the defendant that there was not sufficient corroboration of the testimony of Glenn Stephens to warrant the jury in finding a verdict of guilty. According to Stephens' own testimony, he was an accomplice, and the statutory requirement is that the testimony of an accomplice shall be corroborated by other evidence tending to connect the defendant with the commission of the crime and the corroboration is not sufficient if it merely shows that the offense has been committed and the circumstances of it. *Cook* v. *State*, 109 Ark. 384, and *Polk* v. *State*, 36 Ark. 117.

It can not be said that the conviction of the defendant rested entirely upon the evidence of Glenn Stephens, the accomplice. There is other evidence tending to connect the defendant with the commission of the crime. The corroboration need only be of a character and quality which tends to prove the defendant's guilt by connecting him with the crime. The testimony on the part of the State tends to show that Glenn Stephens, and the defendant had been seen together returning from Little Rock on the Sunday night before the robbery occurred on Tuesday night. Stephens testified that they began planning to commit a robbery on that occasion. The prosecuting witness testified that the man who robbed him weighed about 120 pounds and was of the build of the defendant. He said that the robber had on tight-legged pants and a cap with a long bill on it. This tallies with the way Stephens described the defendant's

dress on that night. The night was dark, and the witness' description of the robber tallies with the appearance of the defendant and the way he was dressed, and this, together with the apparent intimacy between the accomplice and the defendant, was sufficient corroboration of the testimony of the former. *Brown* v. *State,* 143 Ark. 523.

The next assignment of error is that there was a variance between the allegations of the indictment with regard to the description of the property taken and the proof in the case. The indictment alleged that the defendant "did rob the said Garland Dickens of $98.28, good and lawful money of the Government of the United States of America." Garland Dickens testified that he was robbed of $95 in greenbacks and $3.28 in silver. The term greenback is the common name applied to almost all United States treasury notes and not applied to any particular kind of paper currency. It is the popular name applied to all United States Government notes, and this court has held that where the subject of the robbery charged is lawful money of the United States, the charge is supported by proof that it is the ordinary circulated medium of the country called greenbacks that was taken. *Jenkins* v. *State,* 131 Ark. 312, and *Cook* v. *State,* 130 Ark. 90.

The defense in this case is an alibi, and it is earnestly insisted by counsel for the defendant that the court erred in instructing the jury on this phase of the case. The court first gave the jury the following instruction:

"One of the defenses relied upon in this case, gentlemen of the jury, is an alibi. To use plain and simple English means that the defendant pleads that he was not at the place where the alleged robbery is charged to have been committed. Upon the question of alibi, you are instructed that the burden of establishing an alibi in a criminal prosecution rests upon the accused, and in order to maintain it he is bound to establish in its support such facts and circumstances as are sufficient when considered with all other evidence in the case to create in the

minds of the jury a reasonable doubt, not an imaginary, speculative or captious doubt, but a reasonable doubt of the truth of the charge against him.

"And you are further instructed that an alibi is sufficiently established if the proof in support of such alibi, considered with and taken in connection with all other testimony in the case, creates such a probability of its own truth as to engender a reasonable doubt of the truth of the charge or the guilt of the accused of the specific crime of robbery."

Continuing over the objections of the defendant, the court gave to the jury the following:

"No. 1-A. And you are further instructed, in order for such alibi to be effective, it must explain the whereabouts of the defendant at the time the alleged robbery is claimed to have been committed; and if, after a careful consideration of all the testimony in support of an alibi, that the whereabouts of the defendant are unexplained for such period of time as would be reasonably required to commit the alleged crime, then you should not consider any testimony in support of such alibi."

The last instruction was objected to by the defendant 'for the reason that it invades the province of the jury and singles out certain testimony. The defendant duly excepted to the action of the court in overruling his objection to the instruction.

The purpose of an instruction in regard to an alibi where that defense is interposed is that the jury may be told in plain terms that if, upon a full consideration of the evidence adduced to prove an alibi in connection with the other evidence they entertain a reasonable doubt of the defendant's guilt, they should acquit him. *Blankenship* v. *State,* 55 Ark. 244; *Woodland* v. *State,* 110 Ark. 15, and *Joiner* v. *State,* 113 Ark. 112.

The first part of instruction No. 1-A was correct in telling the jury that, in order to render an alibi effective as a defense, it must cover the period of time during which the offense is shown to have been committed, so as to preclude the defendant's presence at the time and place

of its commission. The vice of the instruction, however, is in the latter part where it, in effect, tells the jury that if the evidence in support of the alibi does not explain the whereabouts of the defendant for the period of time covered in the commission of the crime, the jury should not consider any testimony in support of the alibi. This was wrong. The proof of an alibi is as much a denial of the crime as any other defense, and proof tending to establish it, though not complete, may, nevertheless, with the other facts of the case, raise doubt enough to produce an acquittal. Evidence of an alibi, though insufficient of itself to establish that defense, should not be excluded from the consideration of the jury. While such testimony may not establish a perfect alibi, and though it may not cover the entire time during which the crime may be shown to have been committed, or so much as to render it impossible that the defendant could have committed the offense, yet it may be considered by the jury in connection with the other evidence, and if, when so considered, it raises a reasonable doubt that the defendant committed the crime, it is the duty of the jury to acquit. The instruction as given invaded the province of the jury. The defendant had only to raise in the minds of the jury a reasonable doubt of his guilt springing out of all the evidence in the case, and the court erred in telling the jury, in effect, that it should not consider any of the testimony in support of the alibi unless the evidence on that point explained the whereabouts of the defendant during the whole period of the time during which the offense was committed.

This is the effect of our decision in *Wells* v. *State,* 102 Ark. 627. There the court disapproved an instruction which told the jury that, unless they found from the evidence that the defendant had established an alibi, it was their duty to convict him. The instruction should have been that, if the proof of the alibi in connection with the other evidence was sufficient to raise in the minds of the jury a reasonable doubt as to the defendant's guilt, then it was their duty to acquit.

While the instruction in the present case does not tell the jury that, unless it should find from the evidence that the defendant has established an alibi, it will find him guilty, it does tell the jury that if the evidence of an alibi does not cover the whole period of time during which the crime was committed, the jury should not consider any of it. The difference is in degree merely, and clearly invades the province of the jury. If it is the duty of the jury to acquit the defendant if the evidence upon the subject of an alibi in connection with the other evidence in the case raises a doubt as to his guilt, then it is manifestly prejudicial to his interests to tell the jury not to consider any evidence on the subject of an alibi unless it covers the whole period of time during which the offense was committed. Although the evidence might not establish a perfect alibi, the jury had a right to consider it with the other evidence in the case; and, if from all the evidence together a reasonable doubt of the defendant's guilt is raised, there should be an acquittal.

The court erred in telling the jury the defendant must produce sufficient evidence to establish his alibi, or else the jury should not consider any of the evidence on this point.

The defendant also assigns as error certain remarks of the prosecuting attorney and also an alleged error of the court admitting certain testimony out of its order. These alleged errors are not likely to occur on a new trial of the case, and for that reason we will not determine them.

For the error in giving instruction No. 1-A, the judgment must be reversed and the cause remanded for a new trial.