WOODALL *v.* STATE.

Opinion delivered November 7, 1921.

1. HOMICIDE—INSANITY—INSTRUCTION.—Where the defense in a murder case was that defendant was temporarily insane at the time of the killing, an instruction that in determining whether defendant was insane at the time of the killing the jury may consider all his acts at the time, before and since the killing, and his appearance and actions during the trial.

2. HOMICIDE—INSANITY—BURDEN OF PROOF.—It was not error in a murder case to instruct the jury that the burden of showing insanity is upon the defendant, and that, unless this has been done by a preponderance of the evidence, the defense must fail.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; affirmed.

*J. N. Rachels,* for appellant.

*J. S. Utley,* Attorney General; *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

HART, J. This is the second appeal in this case. On the former appeal the defendant was convicted of murder in the second degree, and his punishment was fixed by the jury at twenty years in the State penitentiary. The judgment of conviction was reversed because the court erred in instructing the jury. *Woodall* v. *State,* 159 Ark. 33.

On the 28th day of July, 1921, the defendant was again tried, and the jury returned a verdict of murder in the second degree, but fixed his punishment at eight years in the State penitentiary. To reverse that judgment, the defendant has duly prosecuted an appeal to this court.

The evidence for the State, briefly stated, is that early in the morning on the 18th day of September, 1920, the defendant, Lee Woodall, drove a wagon very rapidly to the home of a neighbor, S. P. Rudisill. Mr. Rudisill was feeding his stock and, immediately after the parties had spoken to each other, Woodall commenced shooting at Rudisill, and shot at him about twelve

times. Several of the bullets struck Rudisill, and he died from the effects of his wounds several hours later on the same day.

The defendant pleaded insanity. The evidence advanced in his favor tends to show that he thought Rudisill was trying to poison his stock and to injure his family in various ways; that he brooded over these imaginary wrongs until he became temporarily insane, and while in that condition killed Rudisill.

The first assignment of error is that the judgment should be reversed because the court gave instruction No. 5 over the objection of counsel for the defendant. The instruction is as follows:

"In deciding the question as to whether the defendant was insane or sane at the time of the killing in this case, you are instructed that the burden to show insanity is upon the defendant, and unless this has been done by a preponderance of the evidence then this defense must fail, and you may also consider all his acts at the time, before and since the killing, as such acts and conduct may have been shown by the testimony, and you also have the right to consider the defendant's appearance and actions during the trial as a circumstance in determining his sanity at the time of the killing."

It is first insisted that the instruction is erroneous because the latter part of it tells the jury that it might consider the defendant's appearance and conduct during the trial as a circumstance in determining his insanity at the time of the killing.

Counsel for the defendant contends that, inasmuch as it was not claimed that the defendant was permanently insane, his acts and conduct at the time of the trial could not be considered by the jury in determining whether he was temporarily insane at the time of the killing.

We cannot agree with counsel in this contention. A similar instruction was approved in the case of *Diggs* v. *State*, 126 Ark. 455. In that case instructions

were given on the question of temporary insanity, or insanity at the time of the killing. The court specific ally told the jury that, in determining whether or not the defendant was of sound or unsound mind at the time of the killing, they might consider his mental capacity up to the present time. This testimony was introduced, not for the purpose of showing that the defendant was sane or insane at the time of the trial, but as shedding light on the question of whether he was insane at the time the killing occurred. His conduct and bearing at the trial might shed much or little light, or none at all, as to the mental condition of the defendant at the time of the killing. However, his conduct and bearing at the trial were proper matters for the jury to consider in determining the defendant's mental condition at the time of the killing. His mental attitude at the trial might tend to show whether or not he was easily excited or likely to brood over imaginary wrongs to the extent of becoming temporarily insane. Underhill on Criminal Evidence, (2 Ed.) § 160, and *Reed* v. *State,* 102 Ark. 525.

Again the instruction tells the jury that the burden of showing insanity is upon the defendant, and that, unless this has been done by a preponderance of the evidence, the defense must fail. This part of the instruction is not subject to the vice of an instruction on the question of alibi in *Haskins* v. *State,* 148 Ark. 351. In that case the court told the jury that if, after a careful consideration of all of the testimony in support of the alibi, the whereabouts of the defendant were unexplained at the time the crime was committed, then it should not consider any testimony in support of the alibi.

We held that the instruction as given invaded the province of the jury. The court erred in telling the jury that it could not consider the testimony on the question of the alibi if the defendant failed to establish that defense. The defendant had only to raise in the minds of the jury a reasonable doubt of his guilt from all the evidence in the case, and in determining his

guilt or innocence the jury might consider the evidence on the question of an alibi, although such evidence was not sufficient to maintain that defense.

The instruction in the present case, however, does not go to that extent. It correctly tells the jury that the burden of proof was upon the defendant to show insanity, and that, unless he established that defense by a preponderance of the evidence, it must fail. By this was meant that the defense of insanity must fail if insanity was not established by a preponderance of the evidence. The instruction, however, did not tell the jury that the evidence could not be considered if the defense of insanity was not established. The burden is on the State to prove beyond a reasonable doubt that the defendant committed the crime for which he is charged, and the law presumes every man to be sane. The reason for the latter presumption is, that sanity is the normal condition of mankind. *Casat* v. *State,* 40 Ark. 511; *Scruggs* v. *State,* 131 Ark. 320, and *Bell* v. *State,* 120 Ark. 530.

Therefore the court did not err in giving instruction No. 5 at the request of the State. Objections are made to other instructions given by the court, but we do not deem it necessary to set them out. We have carefully examined them, and, while the form of some of them might be improved, yet the instructions, as a whole, fully and fairly presented to the jury the respective theories of the State and of the defendant.

The defendant relied for an acquittal upon his plea of temporary insanity or insanity at the time of the killing. The court gave full instructions on this phase of the case and upon the question of reasonable doubt.

We find no prejudicial error in the record, and the judgment will therefore be affirmed.