Middleton *v*. State.

Opinion delivered February 18, 1924.

1. CRIMINAL LAW—HARMLESS ERROR.—Though, before selecting the jury, the State announced that accused would be tried under one indictment, it was not error subsequently, before the jury was sworn, to permit the State to try him under another indictment, no prejudice being shown, and the accused not having requested the court to select a new jury or to excuse any of the panel selected.

2. CRIMINAL LAW—NO REVERSAL EXCEPT FOR PREJUDICIAL ERROR.—A judgment of conviction will not be reversed unless prejudicial error was committed.

3. CRIMINAL LAW—EVIDENCE OF OTHER CRIME.—Evidence of other crime is admissible to prove the specific crime charged when it tends to establish motive or guilty knowledge on the part of accused or shows it to be a part of the same criminal plan or scheme as the main offense; it being necessary that some relation to or connection with the main offense exists.

4. CRIMINAL LAW—OPENING STATEMENT OF PROSECUTING ATTORNEY.— In a prosecution of accused as accessory before the fact to grand larceny of an automobile, the opening statement of the prosecuting attorney that the State would prove that the accused had taken two other automobiles or caused them to be taken in the same way as the car mentioned in the indictment, was not improper, as such evidence would tend to show motive, or that the taking charged was part of a general scheme of accused to procure other persons to steal automobiles for him.

5. CRIMINAL LAW—DISCRETION AS TO WITHDRAWAL OF TESTIMONY.— A defendant is not permitted to sit by and allow testimony to be developed against him, and then, as a matter of right, have it withdrawn from the jury, and the exclusion of such testimony, once thus admitted, is within the trial court's discretion.

6. CRIMINAL LAW—ACCOMPLICE—CORROBORATION.—Corroborating evidence need only tend to connect accused with the commission of a

crime, but must do so independently of the testimony of the accomplice.

7. CRIMINAL LAW—CORROBORATION OF ACCOMPLICE.—In a prosecution or accused as accessory before the fact to grand larceny of an automobile, corroborating evidence *held* sufficient to support the verdict.

8. CRIMINAL LAW—EXCLUDED TESTIMONY—PREJUDICE.—Where, on appellant's objection, the court refused to permit certain questions to be answered, and told the jury that the questions were incompetent, no error is shown.

9. WITNESSES—CROSS-EXAMINATION OF ACCUSED.—The cross-examination of accused as a witness as to his associates, antecedents and guilty connection with other crimes is largely within the discretion of the trial court, such matters affecting the credibility of the accused.

10. CRIMINAL LAW—ADMISSIBILITY OF REBUTTAL EVIDENCE.—In a prosecution of accused as accessory before the fact to grand larceny of a car, where witnesses testified that they had met accused at a certain place after they had stolen cars for him, and accused, on cross-examination, denied having been there, testimony of another witness that he had been with accused and others at such place was competent to show a common scheme of accused in having cars stolen for him.

11. CRIMINAL LAW—INSTRUCTION.—In a prosecution of accused as accessory before the fact to grand larceny of an automobile, where no objection until after its admission was made to testimony that two other cars were subsequently stolen, it was then discretionary with the trial court to exclude it, and, upon refusing to do so, it was proper to tell the jury that such evidence could be considered only as a circumstance tending to shed light on the question whether accused advised the theft of the car mentioned in the indictment.

12. CRIMINAL LAW—HARMLESS ERROR.—No prejudice resulted where the court withdrew an instruction from the jury.

Appeal from Pulaski Circuit Court, First Division; *John W. Wade,* Judge; affirmed.

*Murphy, McHaney & Dunaway,* for appellant.

*J. S. Utley,* Attorney General, *John L. Carter,* Assistant, for appellee.

HART, J. Clarence Middleton prosecutes this appeal to reverse a judgment and sentence of conviction against him for the crime of accessory before the fact to grand larceny.

The first assignment of error is that the court erred in allowing the defendant to be put on trial for the crime for which he was convicted after a jury had been selected to try him for a different offense.

It appears from the record that the prosecuting attorney first announced that the State would try the defendant on another indictment; but, after the jury was selected, the prosecuting attorney announced that the State would try the defendant on the indictment in question. The defendant, at the time, objected to the substitution of the indictment, and saved exceptions to the ruling of the court.

The change in the indictment was made because of the absence of a witness in the other case. The defendant did not request the court to select the jury anew, or to excuse any of the panel selected. The jury had never been sworn to try the other case, and was afterwards sworn to try the case at bar. It appears to us that, under the circumstances recited, the record shows that no prejudice resulted to the defendant, as far as the present case is concerned. He had already selected the jury as a fair one to try him under another indictment. The jury had not been sworn to try the first case. The defendant did not ask for them to be examined again as to any prejudice against him in the case at bar. He did not ask that any of the panel be excused. It is well settled in this State that a judgment of conviction will not be reversed unless prejudicial error was committed by the trial court. *Sellers* v. *State*, 93 Ark. 313; *Monk* v. *State*, 130 Ark. 358, and *Rogers* v. *State*, 136 Ark. 161.

The next assignment of error is that the court erred in allowing the prosecuting attorney to say, in his opening statement to the jury, over the objections of the defendant, the following: ''The prosecutor, in his opening statement to the jury, stated that the State would prove that defendant had taken two other automobiles, or caused them to be taken, to one Woods' house, in the same way as the Studebaker car mentioned in the indictment, and that said cars had been stolen.''

The indictment under which the defendant was tried and convicted charges him with advising and encouraging Roy McCallum and Louis Craig to steal an automobile from the Studebaker Corporation of America. To sustain their contention on this assignment of error, counsel for the defendant invoke the general rule that the commission of one crime is not admissible in evidence to prove the accused guilty of some other crime. It is equally well settled that there are several exceptions to the general rule. Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish motive on the part of the defendant, or that the evidence of the other offense shows it to be a part of the same criminal plan or scheme as the main offense. In other words, there must be, in the extraneous crime thus sought to be proved, some relation to or connection with the main offense. There must be a common motive or intent running through all the transactions, or they must be such in their nature as to show guilty knowledge on the part of the defendant at the time of the main transaction. Reed v. State, 54 Ark. 621; Nash v. State, 120 Ark. 157, and Hall v. State, 161 Ark. 453.

The statement of the prosecuting attorney is that the State would prove that the defendant had taken two other automobiles, or caused them to be taken, to Woods' house in the same way as the Studebaker car mentioned in the indictment. This would tend to show a motive on the part of the defendant which induced him to advise and encourage McCallum to steal the car in question, or to show that it was a part of the general scheme of the defendant to procure other persons to steal automobiles for him.

The next two assignments of error relate to the testimony of Roy McCallum and Louis Craig, and may be considered together.

Roy McCallum was a witness for the State, and testified, without objection, that he stole the Studebaker car at the instigation of the defendant, and carried it out in the country to Woods' house. Subsequently the defend-

ant met him and Craig in a restaurant, and advised them to steal other cars to be used by him in running whiskey. No objection was made to any of the testimony of McCallum.

Louis Craig was also a witness for the State, and testified about helping McCallum to steal two automobiles at different times, at the instigation of the defendant. The defendant advised them to steal the automobiles to be used by him in running whiskey, and agreed to pay them for doing it. On cross-examination he was asked if he had any knowledge of the stealing of the Studebaker car, or in any manner participated in it. Craig replied that he had nothing whatever to do with it.

Counsel for the defendant then moved to exclude the testimony with regard to the other stolen cars, except the Studebaker car charged in the indictment, and saved their exceptions to the ruling of the court in refusing to exclude the testimony.

It is the contention of counsel for the defendant that the theft of the other two cars occurred subsequently to the theft of the Studebaker car charged in the indictment, and that therefore proof of these crimes in no sense would be a part of a common scheme on the part of the defendant to steal automobiles. They claim that the thefts of the other two cars, subsequent to that of the Studebaker car, are distinct transactions, and in no way connected with the theft of the Studebaker car.

We need not decide this question. Under our rules of practice, counsel could not wait until after the testimony had been admitted and then, as a matter of right, have it excluded, even if the theft of the other cars had no connection with or relation to the theft of the Studebaker car. They should have objected, in the first instance, to its introduction because no connection was shown between the two thefts.

A defendant is not permitted to sit by and allow testimony to be developed against him and then, as a matter of right, have it withdrawn from the jury. The exclusion

of the testimony, after it had been offered, was a matter in the discretion of the court, and it does not appear to us that the court abused its discretion in this respect. It cannot be said that counsel for the defendant were misled by the court's action in allowing the opening statement of the prosecuting attorney with regard to the two thefts. There it was stated by the prosecuting attorney that he would prove that the defendant had taken two other automobiles, or caused them to be taken, to Woods' house in the same way as the Studebaker car. This, as we have already seen, would tend to show a common scheme on the part of the defendant to procure the theft of all the automobiles as a part of a common plan, and it does not appear that the opening statement of the prosecuting attorney was not made in good faith. Hence we are of the opinion that the defendant should have objected to the testimony of McCallum and Craig, with reference to their subsequent theft of automobiles, because they were not related to or connected with the theft of the Studebaker automobile, at the time the testimony was given.

The next assignment of error is that the evidence is not legally sufficient to support the verdict. It is earnestly contended by counsel for the defendant that there is not sufficient corroboration of the testimony of Roy McCallum, who admitted that he stole the Studebaker car, and said that he did so at the instance of the defendant.

This court has uniformly held that the evidence relied upon for corroboration must, independently, and without the aid of the testimony of the accomplice, tend to connect the defendant with the commission of the crime. It is not necessary that the corroborating evidence should be sufficient to convict. It need only tend to connect the accused with the commission of the crime. *Brewer* v. *State,* 137 Ark. 243, and *Haskins* v. *State,* 148 Ark. 351. Tested by this rule, we think the corroborating evidence was sufficient.

H. F. Caskey, a salesman for the Studebaker Corporation, testified that a five-passenger Studebaker auto-

mobile was stolen from that corporation about ten o'clock in the morning in April, 1923, from the northwest corner of Fifth and Scott streets, in Little Rock, Arkansas. The witness stated that he first saw the automobile, after it had been stolen, at a farmer's house in Saline County, Arkansas.

On cross-examination he stated that the automobile was stolen on the last day of April, 1923.

Roy McCallum was the principal witness for the State. According to his testimony, he is nineteen years of age, and lives with his father and mother in Little Rock, Arkansas. He had known the defendant for about a year and a half, at the date of the trial. On the 30th day of April, 1923, the witness stole a Studebaker car belonging to the Studebaker Corporation, from Fifth and Scott streets, in the city of Little Rock, Arkansas. He stole the car to make some money out of it. He first carried the car to Albert Koban's place, on the Nineteenth Street pike. Subsequently he carried the car to the farm of a man named Woods, and placed it under a shed there. On this occasion the witness drove the Studebaker car to Woods' house, and the defendant went there in a Dodge car. The witness came back to Little Rock with the defendant in his Dodge car. The defendant went there for the purpose of bringing the witness back with him. The defendant talked with the witness about stealing cars for him before the car in question was stolen. The defendant did not tell the witness to steal this particular car, but did procure him to steal cars for him. The defendant had the witness to carry the car to Woods' house for the purpose of hiding it, and then brought the witness back to town with him. About a month after this the defendant met the witness and Craig in a restaurant, and made arrangements with them to steal cars for him, to be used in running whiskey. Pursuant to this plan, the witness and Craig first stole a Hupmobile car and then a Dodge car for the defendant.

Craig was also a witness for the State. According to his testimony, he assisted McCallum in stealing the Hup-

mobile and Dodge cars, but he did not have anything whatever to do with stealing the Studebaker car.

The theft of the automobile by some one is established by the testimony of Caskey, and Roy McCallum testified that he stole it, under the advice and procurement of the defendant. This made McCallum an accessory, and the court told the jury, as a matter of law, that his testimony must be corroborated, within the rule announced above, in order to convict the defendant. That is to say, it must be shown by other evidence that the defendant was connected with the commission of the crime. The State relied for corroboration upon the testimony of H. W. Woods and his son, Clarence Woods.

According to the testimony of H. W. Woods, he lived about a mile and a quarter from the turnpike road, in Grant County, Arkansas, and was engaged in farming. He has known the defendant five or six years. A brother of the defendant had married one of Woods' daughters. Woods had only seen Roy McCallum one time before he brought the Studebaker automobile to his house. Some time before this the defendant and McCallum came by Woods' house and asked him about some dogs. They were in a Ford car at that time. They only stayed a few minutes, and the defendant called McCallum "Skimpy." The next time McCallum came to Woods' house was when he brought the Studebaker car in question. He drove the car there by himself. The defendant was already there. He came in his Dodge car, and had been there about two hours when McCallum came. Woods went on about his work, and supposed that McCallum and Middleton left the place together. Anyway, the witness left them at the house together, and when he came back they had gone. The car stayed under the shed at Woods' house something over a week, and then McCallum came back and got it. It was shown by other testimony that Woods lived about twenty miles from Little Rock.

Clarence Woods corroborated the testimony of his father about McCallum and Middleton coming to the

house, separately, on the day that McCallum brought the Studebaker car there. He says that he did not see the defendant and McCallum leave together, but thinks that they did so. The witness was at work around the place, and knew that they left about the same time.

We think this testimony of Woods and of his son was sufficient corroboration of the testimony of McCallum. Woods lived about twenty miles from Little Rock, which was the home of the defendant and of McCallum. McCallum had never seen Woods but once before. Then he came by there with the defendant, and only stayed a few minutes. The defendant called McCallum "Skimpy," which indicated that he was familiar with him. The next time McCallum came back he brought the stolen car for the purpose of leaving it there. The defendant had been there about two hours when McCallum arrived with the stolen car. Woods and his son soon left and went about their work, leaving the defendant and McCallum at the house together. When they returned both of them had gone. The circumstances indicated that the defendant was at Woods' house, waiting for McCallum to arrive with the stolen car, and that they left together in the defendant's car to return to Little Rock. The attending circumstances tended to establish these facts, and this is what McCallum testified were the facts. This testimony of McCallum's is sufficiently corroborated by the testimony of H. W. Woods and his son. When their testimony is considered together, with all the reasonable inferences to be drawn from it, it appears that the defendant was connected with the theft of the automobile. Of course, according to his testimony and the evidence adduced in his behalf, he was not guilty. The jury was, however, the judge of the credibility of the witnesses, and, they having found the defendant guilty, the verdict must stand if there is any testimony legally sufficient to support it.

Being of the opinion that the evidence of McCallum was sufficiently corroborated, the jury was warranted in finding the defendant guilty. See *Haskins* v. *State*. 148 Ark. 351, and *Owens* v. *State,* 159 Ark. 503.

The next assignment of error is that the court erred in permitting the prosecuting attorney to read over an alleged statement made by H. W. Woods, in the presence of the officers, which statement tended to contradict his own testimony. The record shows that the prosecuting attorney asked the officers if Woods had made certain statements to them, and if he was not asked certain questions and had answered them. Counsel for the defendant made objections to this testimony, and the court expressly excluded the testimony from the jury. The court told the jury, in plain language, that the questions were incompetent, and the answers were not read to the jury as evidence. Hence the assignment of error is not well taken.

The next assignment of error is that the court erred in permitting the prosecuting attorney, in his cross-examination of the defendant, to ask him if he had not been guilty of certain minor criminal offenses. The cross-examination of a witness as to his associates, antecedents, and guilty connection with other crimes, is largely within the discretion of the trial court. Such matters affect the credibility of the defendant as a witness, and it does not appear that the court abused its discretion in this respect. *Hollingsworth* v. *State*, 53 Ark. 387, and *Noyes* v. *State*, 161 Ark. 340.

It is next insisted that the court erred in allowing the State to show in rebuttal, by Godwin Brown, that he had been with the defendant and other persons to Koban's place one night. The defendant had been asked, on cross-examination, if he had not been to Koban's place last winter, and he replied that he had not. He stated further that he had never met Koban until recently. McCallum and Craig both had stated that they had been to Koban's place and had met the defendant there, after they had stolen cars for him. The evidence was competent, as being a part of the circumstances, to show a common scheme or plan on the part of the defendant in having automobiles stolen for his use in running whiskey.

The next assignment is that the court erred in its instructions to the jury. The court was asked by the

defendant to tell the jury that they could not consider, for any purpose, that there were two other cars stolen besides the Studebaker car. The court refused to so instruct the jury. It told the jury, however, that it could not convict the defendant unless it found him guilty of the specific charge laid in the indictment. The jury was told that the evidence of the theft of the other two automobiles was only competent as a circumstance shedding light upon whether or not the defendant counseled, aided, or abetted in the commission of the larceny charged in the indictment.

As we have already seen, no objection was made to this testimony until after it had been given. It was then a matter of discretion with the court as to whether the defendant should be allowed to object to the testimony and have it excluded from the jury. There is no abuse of the discretion of the court in refusing to exclude the testimony after it had been admitted, and it was therefore proper to tell the jury that it could only be considered as a circumstance tending to shed light on the main fact, and that was whether the defendant had advised the theft of the Studebaker car, as charged in the indictment.

Objection is also made to instruction No. 15. It appears from the transcript that the court withdrew it from the jury. We do not need to set out the instruction for that reason. If the court withdrew it from the jury, it could not have prejudiced the defendant at the trial.

We find no reversible error in the record, and the judgment will be affirmed.