HARRIS *v.* STATE.

Opinion delivered October 26, 1925.

1. STATUTES—CONSTRUCTION.—Statutes should be construed with reference to the public policy they are designed to accomplish.

2. CRIMINAL LAW—SPECIAL TERM OF COURT.—Crawford & Moses' Digest, §§ 2211-2214, providing for the calling of a special term of the circuit court in order to protect persons accused of certain crimes, and directing that their trial be had within ten days, is directory as to the time of trial, which may be had on a later date.

3. CRIMINAL LAW—SPECIAL TERM OF COURT.—Where a special term for the trial of persons in jail is ordered under Crawford & Moses' Digest, § 2218, the provision in § 2212, *Id.*, with reference to beginning the trial within ten days, has no application.

4. CONTINUANCE—ABSENT WITNESS.—It was not error to refuse to continue a case on account of the absence of a material witness for the town where no request was made to postpone the trial to a later date in the term and no showing was made that the attendance of the witness could be secured at another term of the court.

5. HOMICIDE—SUFFICIENCY OF EVIDENCE.—Evidence *held* to sustain a conviction of murder in the first degree.

Appeal from Ashley Circuit Court; *Turner Butler,* Judge; affirmed.

*Vernon Bankston,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

HART, J. Aaron Harris was indicted for murder in the first degree, charged to have been committed by killing Scott Streeter. He was tried before a jury, which returned a verdict of guilty of murder in the first degree, and, from a judgment upon the verdict sentencing him to death, the defendant has duly prosecuted an appeal to this court.

The first assignment of error is that the call for the special term of court at which the defendant was indicted and tried was not made according to law. The order convening the special term of the court is as follows:

"Whereas, the sheriff of Ashley County has notified the judge of the circuit court that there is reasonable ground for believing that mob violence will be committed within the State of Arkansas, and has requested the said judge to call a special term of court in order that the above-named persons be brought to immediate trial, and such other persons who may be in the county jail and unable to make bond.

"And therefore it is ordered that a special term of the circuit court in and for Ashley County, Arkansas, shall be convened and held on the 14th day of April, 1925, and it is further ordered that the clerk of said court issue a special venire for a grand jury to appear at nine o'clock on the forenoon of said day to investigate the case of the State of Arkansas against the said Aaron Harris and Dick Davenport and others confined in jail, and it is ordered that such other and further proceedings be had at said special court as may be necessary for the immediate trial of the aforesaid persons. It is further ordered that the clerk issue a notice to the prosecuting attorney of the Tenth Judicial Circuit of the time and purpose of said special court.

"Witness my hand as judge of the Tenth Judicial Circuit this 31st day of March, 1925.

"Turner Butler, Circuit Judge."

The transcript also shows that this order was spread upon the record of the circuit court, and that the prosecuting attorney was given due notice of the holding of the special term for the purpose of trying Aaron Harris, Dick Davenport, and such other persons as might be confined in the jail of Ashley County charged with crime.

The first objection to the call is that it is dated March 31, 1925, and that the special term was called for the 14th day of April, 1925.

Under our statute providing for special terms to prevent mob violence in certain cases, it is the duty of the circuit judge, upon receipt of notice and request from the sheriff for a special term as provided by the statute,

to call a special term of the court and begin the trial of the person charged with crime as designated in the statute within ten days from the receipt by such judge of such notice from the sheriff. Crawford & Moses' Digest, §§ 2211-2214. Hence it is insisted that the judgment of conviction in the present case must be reversed because the special term of court was not held within the ten days prescribed by the statute.

In the first place, the statute must be construed with reference to the public policy which it was designed to accomplish. The framers of the statute evidently passed it for the protection of persons accused of certain crimes and intended that the trial of such persons should be begun within ten days to protect them from mob violence. *Bettis* v. *State,* 164 Ark. 17.

While the precise question was not decided in that case, it is evident from the reading of the opinion that it proceeded upon the theory that the act was directory or precautionary. If the act is directory, holding the special term of the court more than ten days after the call was made by the circuit judge would be at most irregular, and would not constitute prejudicial error calling for a reversal of the judgment. The presumption would be in its favor, and this presumption must be indulged in until the contrary appears.

There is nothing whatever in the present record to show that the defendant was prejudiced by the special term being held more than ten days after the call. It is argued that an absent witness might have been secured if the trial had been held within the ten days; but there is nothing whatever in the record to show that the attendance of this witness could have been procured as will more certainly appear in the discussion of the alleged error for refusing to grant the defendant a continuance.

Moreover, the record shows that the call was made by the court under § 2218 of the statute, which provides that a circuit judge may at any time hold a special term for the trial of persons confined in jail by making a writ-

ten order to that effect and transmitting it to the clerk, who shall enter the same on the records of the court. The transcript shows that the call was made, entered of record, and notice given to the prosecuting attorney, and that all the other steps required by statute were made in conformity therewith and in accordance with the rule laid down by this court. *Beard* v. *State,* 79 Ark. 293; *Hill* v. *State,* 100 Ark. 373; *Reece* v. *State,* 118 Ark. 310; and *Bell* v. *State,* 120 Ark. 530. Hence we hold that this assignment of error is not well taken.

In the next place, it is insisted that the judgment should be reversed because the court erred in refusing to grant the defendant's motion for a continuance. It appears from the record that the defendant killed Scott Streeter on Saturday night, March 28, 1925, and that he was captured on the following Monday morning and confined in jail until a special term of the court was called to try him on the 14th day of April, 1925. In his motion for a continuance, the defendant states that Dan Dupree was standing within ten or fifteen steps of Scott Streeter at the time he was shot by Aaron Harris, and, if present, he would testify that he saw the deceased draw his gun and tell Aaron Harris to stick up his hands; that he snapped his gun at Harris two or three times, and that Harris then drew his gun and shot two or three times, and that the deceased fell beside a fence post.

The sheriff and two of his deputies were examined by the court as to the whereabouts of Dan Dupree, the absent witness. According to the testimony of the sheriff, he had a subpoena for Dan Dupree before the grand jury about ten days before, and had made all efforts to locate him, and among other things had telephoned down to the farm where Dupree lived and tried to locate him. There was a liquor charge and pistol charge against the witness, and the sheriff had arrested him on these charges. The owner of the farm on which Dupree lived agreed to be personally responsible for his appearance before a justice of the peace, and the sheriff released

him.   He went down to where Dupree lived on the 12th of April, 1925, and found that he had left there.   According to the testimony of a deputy sheriff, Dupree left on Sunday night, one week after the shooting for which Aaron Harris was charged.   The deputy was informed that Dupree went to Louisiana.

Another deputy sheriff testified that Dupree had left the State, and other people in the community said that he had left because there was a whiskey charge against him.   The house in which Dupree lived was vacated, and his wife had gone to her relatives.

The defendant made no attempt to show that he could secure the attendance of Dupree at another term of the court, and did not ask that the trial be postponed to a later day of the special term in order to take his deposition.   Under these circumstances, it can not be said that the circuit court abused its discretion in refusing to grant the defendant's motion for a continuance.   *Bruder* v. *State,* 110 Ark. 402; *Miller* v. *State,* 94 Ark. 538; *Wood* v. *State,* 159 Ark. 671; *Burt* v. *State,* 160 Ark. 201; and *Scott* v. *State, ante* p. 326.

In this connection it may be stated that the evidence shows that Dupree left about a week after Harris shot Streeter, and that he left because there was a whiskey charge against him.   Under these circumstances the circuit court was right in finding that he would not likely return, and that the defendant could not have procured his attendance at the trial, even if it had been held within the ten days from the time that defendant shot the deceased.

It is also earnestly insisted that the testimony is not legally sufficient to sustain a verdict for murder in the first degree.

Burl Odell, a sixteen-year-old boy, was one of the first persons to arrive where Scott Streeter fell.   According to his testimony, he found Scott Streeter lying on his left side with his face to a fence.   He had his left hand on his stomach, and his right hand over his left

hand. A physician was summoned and found that Streeter was shot in the stomach. He gave him at different times two hypodermics of morphine and carried him to a hospital at Lake Village to be operated on. In performing the operation, it was found that his intestines were cut in three places. Streeter was shot Saturday afternoon, March 28, 1925, and died at 12:30 o'clock on the next morning.

According to the testimony of R. C. Avery, he saw three shots fired by a man standing under a light, and he took the man doing the shooting to be a negro. When the last shot was fired, the man who did the shooting broke and ran, and the witness did not see him any more. There was no flash light turned on the man doing the shooting. He was standing something like eight or ten feet from an electric light, and there was no other light, except the flash of his pistol. When the firing ceased, the witness went to where the man who had been shot was lying, and found that he was Scott Streeter. The man who did the shooting was about fifteen feet from the man who was shot.

Other witnesses for the State testified that when they picked up Scott Streeter, they saw a gun, a flash light, and a cap and handcuffs on the ground. They looked as if they had just fallen out of Streeter's coat pocket. They were lying close to his body under the arm of his coat like they had dropped out of his coat pocket. The flash light was not burning when it was picked up. They examined the pistol, looked in it and found that it was unloaded.

The defendant is a negro, and other witnesses, both white and black, say that the defendant told them that he had shot Mr. Streeter because he was "around seeking for whiskey." It was shown that Streeter was a deputy sheriff, and had been especially deputized by a justice of the peace to look after persons violating the liquor laws. It was also proved that the defendant knew Streeter, and knew that he had acted as a deputy sheriff

sometime before this. The sheriff testified that, after he was arrested, the defendant told him that he knew Mr. Streeter, and knew that he was an officer at the time he shot him.

According to the testimony of the defendant and two other persons, Streeter had a flash light and pistol in his hands at the time he was shot. He threw the flash light upon the defendant and told him to put up his hands. The defendant whirled, and Streeter snapped his pistol at him two times. The defendant then got his gun out of his pocket and shot at Streeter three times and ran. He testified that he did not know who Streeter was at the time he shot him.

According to the testimony of the witnesses for the State, the defendant had a bottle of whiskey at the time he shot Streeter. He knew that Streeter was an officer, and he shot at him three times. Streeter did not shoot at the defendant at all, and his pistol was examined by persons who went to where he fell immediately after the shooting. They say that the pistol was unloaded, and that the flash light was not on. Other witnesses for the State testified that Streeter did not turn the flash light on the defendant; but that the defendant fired three shots at him, and that Streeter did not attempt to shoot at the defendant at all.

This testimony is corroborated by the fact that the pistol was unloaded, and that the flash light was not turned on when Streeter fell mortally wounded by the shot in his stomach. His hands were both on the wound, and the jury might have inferred from this that as soon as he was shot the deceased sank to the ground and placed his hands upon his wound.

The evidence for the State, if believed by the jury, warranted it in finding that there was a specific intent in the mind of Harris to kill Streeter at the time he shot him, and that the intent preceded the shooting, and must have been formed after deliberation and premeditation.

Under these circumstances the jury was warranted in finding that there was a wilful, malicious, deliberate, and premeditated killing, and that the defendant was guilty of murder in the first degree. *Coats* v. *State,* 101 Ark. 51; *Cegars* v. *State,* 150 Ark. 648; *Webb* v. *State,* 154 Ark. 67; *Outler* v. *State,* 154 Ark. 598; *Burns* v. *State,* 155 Ark. 1; *Beason* v. *State,* 166 Ark. 142.

Another assignment of error is that the judgment should be reversed because the record does not show that the trial jury was sworn as required by statute. On this point there appears in the record a *nunc pro tunc* order which shows that the jury was duly impaneled and sworn to try the case of the State of Arkansas against Aaron Harris. But it is contended that the judge was not warranted in entering of record this *nunc pro tunc* order. We cannot agree with counsel for the defendant in this contention. On this point, the circuit clerk of Ashley County testified that he was the clerk of the court at the time Aaron Harris was tried, and that the court docket shows the following: "Jury impaneled and sworn; case heard; verdict of guilty of murder in the first degree, 4-16-25." That the above is in the handwriting of Judge Turner Butler, who was the presiding judge of the case of the State of Arkansas against Aaron Harris. The clerk testified further that he administered the oath to the jury, which tried the defendant.

The court reporter also testified that his notes show that the jury was sworn before the trial began, and that he made the notation at the time. The witness further testified that he always looked at his watch when the jury was sworn, and made a particular notation of the time when the jury is sworn, and that there could be no mistake at all about his testimony.

The same judge who tried the case made the *nunc pro tunc* order, and it can not be said that he was not fully justified in making it.

Another ground relied upon for a reversal of the judgment is that the court first made an order calling

for a special term for the trial of Aaron Harris alone and subsequently entered of record a new call which we have copied in this opinion. The language of the two orders are precisely the same, except that the one copied in the transcript contains the names of Dick Davenport as well as Aaron Harris. The record shows that both calls were made upon the same day, and that the first call was canceled and the second one made and spread upon the record because the circuit judge by mistake had not included Dick Davenport in the first call for the special term. They were both made on the same day, and, so far as the defendant is concerned, it would not make any difference which one was held to be valid. If it should be held that the first call was the valid one, it was spread upon the record and contained all the essential requirements that were contained in the second call. If it should be said that the second call is valid, then, as above stated, it contains all of the essential requisites of the statute.

Moreover, it may be said that the law does not consider parts of a day, and that the circuit judge had a perfect right to amend his call on the same day and to include Dick Davenport in the call.

We have carefully examined the record, and find that the defendant was given a fair trial. His rights were carefully guarded by the court, and the instructions fully and fairly covered the respective theories of the State and of the defendant.

We find no reversible error in the record, and the judgment must be affirmed.