## BUTTS *v.* STATE.

### Opinion delivered June 28, 1926.

1. CONTINUANCE—ABSENCE OF WITNESSES.—It was not error to deny a continuance for the absence of witnesses where the affidavit stated merely that their attendance could be procured at the next term of the court, and did not state where the witnesses were nor why their attendance could not be had, nor why they were absent.

2. CONTINUANCE—DISCRETION OF COURT.—Much discretion must be left to the trial court in granting or refusing continuances.

3. ROBBERY—INDICTMENT OF ACCESSORY.—An indictment for the crime of being accessory before the fact to a robbery which charges the principal offenders with robbery and defendant with aiding, abetting and encouraging the robbery, is not insufficient for omitting the words, "in manner and form aforesaid."

4. CRIMINAL LAW—CONFESSION OF PRINCIPAL OFFENDER.—It was not error to permit an officer to testify, in a prosecution of an accessory, that one of the principals confessed his own guilt, without implicating the accessory.

5. CRIMINAL LAW—CORROBORATION OF ACCOMPLICE.—Evidence *held* to corroborate an accomplice in a trial for robbery.

Appeal from Madison Circuit Court; *W. A. Dickson,* Judge; affirmed.

### STATEMENT OF FACTS.

The body of the indictment against the defendant reads as follows:

"The grand jury of Madison County, in the name and by the authority of the State of Arkansas, accuse J,

S. Campbell and Jess Butts of the crime of accessories before the fact of robbery committed as follows, to-wit:

"The said J. S. Campbell and Jess Butts, in the county of Madison, in the State of Arkansas, on the 9th day of February, 1926, Charley Williams and Fred Conway feloniously and violently from the Citizens' Bank of Pettigrew, Arkansas, a corporation, by putting in fear Chas. E. Crawford, the president of said Citizens' Bank, having the legal charge and custody of the funds of said bank, did feloniously and violently take the sum of $1,355.55 gold, silver and paper money, current and lawful money of the United States and the State of Arkansas, and circulating as such, and of the value of $1,355.55, from said Chas. E. Crawford, and against his will, the same being the property of the Citizens' Bank of Pettigrew, Arkansas, and the said J. S. Campbell and Jess Butts, not being present, aided, abetted, advised and encouraged the perpetration of the robbery of said bank aforesaid, against the peace and dignity of the State of Arkansas."

The defendant filed a motion for a continuance and then a supplemental motion on account of the absence of Floyd Dickson and Ed Donahue, for whom subpoenas had been issued in his behalf. In his motion he alleges that Dickson lived in Newton County, Arkansas, and that a subpoena for him was directed to that county; that Dickson's postoffice address is Racker, Newton County, Arkansas, and that Donahue's postoffice address is Pettigrew, Madison County, Arkansas; that each of said witnesses are residents and citizens of the State of Arkansas, and are temporarily absent without the consent, procurement or connivance of the defendant. The testimony which the witnesses would give is then set out in the motion.

The witnesses for the State testified that, on the first day of February, 1926, about three o'clock in the afternoon, Chas. Williams and Fred Conway entered the Bank of Pettigrew, in Madison County, Arkansas, armed, and forcibly took from the bank $1,355.55.

Fred Conway was a witness for the State, and admitted that he was one of the parties who robbed the bank. He testified in detail about the planning of the robbery and how it was committed. According to his testimony, the defendant directed him how to reach the home of his father, where they took dinner on the day following the robbery. The defendant had been given his share of the money secured, in accordance with a previous agreement had with him. According to his testimony, the defendant helped them plan the robbery and furnished them with sacks with which to carry away the money. On the day of the robbery the defendant went to town to see if there were any officers there, and came back towards where the others were hidden and gave them a signal to go ahead and rob the bank.

Other evidence tending to corroborate the testimony of Conway will be stated under an appropriate heading in the opinion.

The defendant was a witness for himself, and denied that he took any part whatever in the robbery, and introduced witnesses tending to show that he was at another place on the day the robbery was committed.

The jury returned a verdict of guilty, and fixed the punishment of the defendant at three years in the penitentiary.

From the judgment of conviction the defendant has duly prosecuted an appeal to this court.

*J. Wythe Walker,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

HART, J., (after stating the facts). It is first insisted that the court erred in refusing to grant the defendant's motion for a continuance.

The record shows that the defendant was arrested on February 20, 1926, charged with accessory before the fact of robbing the Bank of Pettigrew, and was placed in jail and kept there until an indictment was returned against him on the 2d day of March, 1926, and his trial was set for March 8, 1926. He expected to introduce

Floyd Dickson and Ed Donahue as witnesses in his behalf to establish an alibi.

It is true that he states in his motion that Dickson lived in Newton County and Donahue lived in Madison County, and that he could procure their personal attendance at the next term of the court. He does not state, however, where the witnesses were, but only makes a general statement that they were temporarily absent from the court without his consent or procurement. He did not ask for a postponement of the trial, and did not state where the witnesses were, or what business carried them away from home. He does not state when they will return, but only makes a general statement that he could procure their personal attendance at the next term of the court. Much discretion must be left to the trial court in granting or refusing a motion for a continuance. He is on the ground, and knows the local conditions and the situation of the absent witnesses. A general statement that they would be back by the next term of the court, which would be six months away, is too indefinite. Then, too, a statement should have been made of where the absent witnesses were, and whether they were gone on business or pleasure, so that the court would be fully advised of the likelihood of obtaining their presence at court within a reasonable time. If so, the court might have postponed the trial of the case for a short time until they could return. *Lewis* v. *State*, 169 Ark. 340, 275 S. W. 663; *Scott* v. *State*, 169 Ark. 326, 275 S. W. 667; and *Harris* v. *State*, 169 Ark. 627, 276 S. W. 361.

It is next insisted that the court erred in not sustaining a demurrer to the indictment. The indictment in this case substantially conforms to the rule of law laid down in *Jones* v. *State*, 58 Ark. 390, 24 S. W. 1073, as to the essential elements of an indictment of an accessory.

It is true that the indictment in that case charges that the defendant had advised and encouraged the principals in the crime, whose names are set out, had committed the murder "in the manner and form aforesaid," against the peace and dignity of the State of Arkansas, while the indictment in this case leaves out the words,

"in the manner and form aforesaid." We do not think, however, that the omission of these words changes the rule of law. The use of the words, "in manner and form aforesaid," are simply formal and add nothing to the substantial elements of the crime.

In the case at bar, the indictment, after charging the principal offenders with robbery of the bank, concludes by charging that J. S. Campbell and Jess Butt, the defendants, although not being present, aided, abetted, advised and encouraged the perpetration of the robbery of the said bank. As said in the Jones case, this averment relates back to and adopts the words used in the principal charge. Therefore we hold that it is a good indictment for accessory before the fact of robbery.

It is next contended that the circuit court erred in permitting the sheriff of Madison County to testify that he arrested Fred Conway in the State of Missouri for the robbery, and that Conway confessed that he was guilty. We cannot see how this testimony can in any way prejudice the rights of the defendant. Conway was a witness for the State, and testified before the jury about robbing the bank. In his confession to the sheriff he only implicated himself, and did not attempt to tell him, or at least the sheriff did not testify, anything whatever implicating the defendant in the crime. He only made a statement to the jury that Conway had confessed his guilt to him when he arrested him. Hence we hold this assignment of error is not well taken. *Monk* v. *State,* 130 Ark. 358, 197 S. W. 580, and *Middleton* v. *State,* 162 Ark. 530, 258 S. W. 995.

It is next insisted that the testimony of Fred Conway was not sufficiently corroborated to warrant the jury in convicting the defendant.

We cannot agree with this contention. The president of the bank was a witness for the State, and identified Fred Conway as one of the men who robbed the bank. He told in detail about the commission of the robbery. According to his evidence, he lived near a hotel which was run by the defendant. After J. S. Campbell had been arrested as being implicated in the robbery and

placed in jail at Fayetteville, Washington County, the president of the bank went to Fayetteville. Upon his return, the defendant asked him if Campbell was trying to implicate him in the robbery. This was before the defendant was arrested. The defendant also paid off a note which he owed the bank, and made the payment mostly in one-dollar bills. The proof for the State shows that a good many one-dollar bills were taken from the bank when it was robbed.

Conway testified that four persons who planned to rob the bank, including himself and the defendant, met in a hollow near the town on the morning of the robbery.

Another witness for the State testified that he saw the defendant and three other parties in the hollow that same morning.

The father of the defendant was a witness for the State, and admitted that Fred Conway and Charley Williams came to his house the next day after the robbery, just as testified to by Conway. They ate dinner with him, and then left.

Other witnesses for the State testified that the defendant was seen near the bank a short time before the robbery occurred. These facts and circumstances were sufficient to corroborate the testimony of Fred Conway and to warrant the jury in returning a verdict of guilty against the defendant. *Middleton* v. *State,* 162 Ark. 530, 258 S. W. 995, and cases cited.

Objections were made to certain instructions given and refused by the court, which are now pressed upon us as grounds for reversal. We do not deem it necessary to set out these instructions. The instructions given by the court fully and fairly covered the respective theories of the State and of the defendant. The jury was fully instructed on the question of corroboration, in accordance with the rule laid down in the Middleton case above cited, and many other cases which might be cited.

We have carefully examined the record and find no reversible error in it, and the judgment will therefore be affirmed.