Billings v. State.

## Billings v. State.

1. WITNESSES: *Impeachment of: Conflicting statements.*
Under Mansf. Dig., sections 2902, 2903, the right to impeach a witness by
showing that he has made statements different from his testimony, does not de-
pend upon his denial of such statements on cross-examination. And where the
assumed statement is relevant to the issue and the witness, on being asked
whether he made it, answers that he does not remember, proof that he made it
is admissible.

2. CRIMINAL EVIDENCE: *Trial for homicide: Bruises on body of deceased.*
On a trial for murder where there was evidence to show that during the day of
the killing the conduct of the defendant and deceased toward each other was
rough and insulting, and that the deceased was the aggressor in such conduct,
proof on the part of the State that the body of deceased was exhumed a few
days after his death, and that certain bruises were found upon it, which, on be-
ing explained to the jury, tended to elucidate the question as to who had been
the aggressor in the altercation which preceded the killing, was admissible.

3. SAME: *Same: Threats.*
On such trial the State was permitted to prove that two years before the killing,
the defendant, in conversation with the wife of the deceased, wanted to buy

| 52 | 303 |
| 57 | 297 |
| 52 | 303 |
| 58 | 129 |
| 52 | 303 |
| 72 | 412 |
| 52 | 303 |
| f82 | 61 |

her interest in certain lands and that on her refusal to sell on credit, he stated that he would have the land " or some man's hide." HELD : That such threat being ambiguous and too remote, both in circumstance and time, to afford any reasonable presumption of connection with the crime charged, was inadmissible.

4. SAME : *Facts proving offense not charged.*

Facts which go to prove the commission of an offense distinct from that charged in an indictment, are not admissible on the trial of the latter unless, in view of all the circumstances of the cause, there appears to be a connection between such facts and the offense charged, or they tend to prove some fact which it includes.

5. SAME : *Same.*

On a trial for murder the State proved that about two and a half years before the killing, the deceased and one W. had a fight; that a few minutes after the fight the deceased said to one B that he had knocked his (B's) brother-in-law down; that defendant, hearing the remark, ran up with a drawn knife and, saying with curses, " if it's brothers-in-law you are after, I am here," struck at the deceased with the knife. There was no proof that any subsequent altercation occurred between the parties, who were neighbors, or that their relations were thereafter and prior to the day of the killing, unfriendly. HELD :     That evidence of the previous assault could only have been competent to show malice, and as there was no reasonable inference that it had that tendency, it was error to admit it.

APPEAL from *Perry* Circuit Court.

J. B. WOOD, Judge.

*J. F. Sellers,* for appellant.

I.    It was error to allow the State on cross-examination to ask the witness if he had not made certain damaging statements about the defendant in his absence, and on cross-examination of another of defendant's witnesses, allowed the State to prove such statements.    *Whart. Cr. Ev., 225; ib., 483-484; 58 Me., 239 ; 60 Me., 550 ; 64 id., 267 ; 16 Pick., 124 ; 30 Vt., 100; 10 Gray, 6; 63 Barb., 634; 53 N. Y., 164; 44 Cal., 452; 32 Ind., 145; 4 Iowa, 477; 14 Minn., 105 ; 23 Grat., 961 ; 16 Ark., 588-628; 10 id., 638 ; 45 id., 132, 165 ; Rapalji Wit., 109; Best's Ev., p. 632; Stephen's Dig. Ev., 179; 2 Phillips Ev., 903; 1 Starkie Ev., 189; 36 Penn. St., 29; 68 N. C., 124.*

2. Evidence of bruises on the body, without proof of defendant's connection with them, was inadmissible. *Whart. Cr. Ev.*, *48*, *92*.

3. The evidence of Mary Billings as to conversation with and prior assault two years before the killing, was too remote.

4. The court's charge on self-defense was argumentative and misleading. Defendant not required to show prejudice by the error. *11 Oh. St., 470; 26 id., 476; 38 id., 383; 1 Humph., 88; 4 Baxter, 19.*

*W. E. Atkinson*, Attorney General, and *T. D. Crawford*, for appellee.

1. The burden of showing justification was on defendant. *Mansf. Dig., sec. 1520.*

2. The evidence of Handright as to what William Billings told him, tended to impeach his testimony. *Ib., sec. 2902.*

3. The bruises were part of the *res gestæ.*

4. Mary Wallace's testimony was admissible to show *motive*. *2 Bish. Cr. Pro., sec. 629.* It was not too remote.

4. The instruction on self-defense was based on the statute. *Mansf. Dig., sec. 1553; 40 Ark., 454.*

HEMINGWAY, J. The defendant was indicted for murder in the second degree. He testified that he killed the deceased, and sought to excuse it, because it was done as he claimed, in self-defense. He was convicted of manslaughter.

It is assigned for error here, that the court erred; first, in admitting improper evidence; second, in declaring the law applicable to the right of self-defense.

During the morning of the homicide, the deceased, Wallace, the defendant, Dave Billings, William Billings and Ike Brown met at the residence of William Billings, where they all remained until the homicide occurred in the afternoon. The witness, Handright, visited the place during the day, but left before the homicide occurred. It appears that the conduct of the deceased and defendant towards each other during the day

was rough and irritating, attended with violent and abusive language. The evidence of those who were present shows the deceased to have been the aggressor; this the State denied. The appellant was in the house of his friends, and it may be that the witnesses were subject to a bias in his favor. The attitude of the parties toward each other during the day was material in determining the merits of the defense.

William Billings, who is a brother of the appellant, and saw the homicide committed, was produced as a witness in his behalf; he professes to detail the entire transaction from the meeting in the morning until the culmination in the afternoon. If his narrative be true, the conduct of the deceased was violent, abusive and aggressive. To discredit him, the State asked him upon cross-examination, if he did not tell Handright during his visit that day, while the defendant and the deceased were out of the house, "that Dave Billings and Ike Brown had been running over Wallace (the deceased)", all day, and that he "(the witness), did not intend to stand it." He answered that he might have said something like that, but that he did not remember. The State then proved by Handright that the witness had so told him. This evidence was introduced against the appellant's objection, and its admission is now assigned as reversible error.

The State proved that a very short time after the burial of the deceased, his body was exhumed, and certain bruises found upon it, which were explained to the jury.

It produced, as a witness, the widow of the deceased, and she was permitted to detail the particulars of a difficulty between the parties about two and a half years prior to the killing, and a conversation of the appellant with her about two years before the killing. Her testimony was substantially, that at a picnic her husband and one Wilson had a fight; that a few moments after the fight her husband said to one Bostic that he had knocked his brother-in-law, meaning Bostic, down. That appellant, who heard the remark, ran up with a drawn

knife, and said; "If it's brothers-in-law you are after, I am here,". coupled with curses and oaths, at the same time striking at him with the knife. As to the conversation. of the appellant with. her, she testified, that he wanted to buy her interest in their father's estate. That she offered to sell for cash, which he could not pay; that she refused to sell on credit. That he then said he would have the land or some man's hide.

There is no proof of any other altercation between the parties during the interval of over two years; nor does it appear that their relations were unfriendly. The deceased went to the house where appellant was staying on the morning of the homicide, found him there, and remained until he was killed. The defendant had whisky and the deceased brought more; they drank together during the day, and it is probable that all were somewhat under its influence.

This is a sufficient outline of the evidence to an understanding of the questions we are called to consider.

Was it competent to prove by Handright what William Billings had told him?

The statute provides that a witness may be impeached by the party against whom he is produced, by showing that he has made statements different from his testimony. But in order to so impeach a witness, he must be asked if he has made the statement assumed, and the examination should indicate the time when and the person to whom it was made. *Mansf. Dig.*, 2902–3.

1. Witness: Impeachment of: Conflicting statements.

This is but a re-enactment of the common law. It has been proper at all times to discredit a witness by proof of contradictory statements as to a material matter; but it could not be done until he had been cross-examined as to the supposed contradiction in such a manner as to direct his attention to the matter assumed. The rule which prescribes this condition rests on the principle of justice to the witness.

The tendency of the evidence is to impeach his veracity, and common justice demands that before his credit is attacked

he should have an opportunity to declare whether he made such statements to the person indicated, and to explain what he said, and what he intended and meant in saying it.

When this opportunity has been afforded him, justice can demand in his behalf nothing more, and the reason of the rule is satisfied. If he neither admits nor denies the statement, can it be proven?

The decisions of the English courts upon this question are conflicting. If the matter is irrelevant, the proof of contradictory statements is certainly inadmissible ; but if it is relevant, the weight of the English authorities favor their admission. *Phill. on Ev., 2 vol. 960.*

This rule is sustained by American cases. *Payne v. State, 60 Ala., 80; Dufresne and wife v. Weis, 46 Wis., 290.*

The question has never been ruled by this court.

The statute does not place the right to impeach a witness by proof of contradictory statements, upon the condition of his denial. It requires his cross-examination upon the matter ; nothing more. This is exacted in order that he may explain apparent contradictions and reconcile seeming conflicts and inconsistencies. If he cannot remember the fact, he is unable to do what the law affords him the opportunity to do. If he cannot remember the statement made, it is quite as probable that his recollection of the occurrence about which he testifies is inaccurate or incorrect. If contradiction properly affects the value of his testimony when he denies, it is difficult to see why it should not when he ignores the contradictory or inconsistent statements. The testimony is discredited because he affirms today what he denied yesterday ; the legitimate effect of such contradiction cannot depend upon his power to remember it. If the defect in the memory is real, the proof of the contradiction apprises the jury of this infirmity of the witness ; if he has made a false statement under the pretense of not remembering, he should not escape contradiction and exposure. We think the evidence was properly admitted.

Proof of the bruises on the body of the deceased tended to elucidate the disputed question as to who had been the aggressor in the difficulty during the day. It was competent.

2. EVI-DENCE: Bruises on body of deceased.

Did the court err in admitting that part of the testimony of Mrs. Wallace, above stated ?

The conversation of appellant with her is ambiguous. It does not appear to whom he intended his threat to apply. It was too remote from the matter charged, both in circumstance and time, to afford any reasonable presumption or inference of connection between the two affairs.

3. SAME: Threats.

The general rule is well established, in civil as well as in criminal cases, that evidence shall be confined to the issue. It seems that the necessity for the enforcement of the rule is stronger in criminal cases. The facts laid before the jury should consist exclusively of the transaction that forms the subject of the indictment, and matters relating thereto. To enlarge the scope of the investigation beyond this would subject the defendant to the dangers of surprise against which no foresight might prepare and no innocence defend. Under this rule it is generally improper to introduce evidence of other offenses ; but if facts bear upon the offense charged, they may be proven, although they disclose some other offense. The test of admissibility is the connection of the facts offered, with the subject charged. Such connection exists in a variety of cases, and in them it is often proper to prove one offense in a trial for another. The Supreme Court of Alabama has indicated several classes of cases in which this may be done, as follows : First, when necessary to prove the scienter or guilty knowledge which is an element of the offense charged ; second, when the offense charged and the offense proved are so connected that they form part of one transaction; third, when the act proved and the offense charged are similar, and the one tends to fix the intent in the other ; fourth, when it is necessary to prove a motive for the offense charged, and there is an apparent relation or connection between it and the other acts

4. SAME: Facts proving offense not charged.

proved; and again when it tends to prove the identity of the offender or of an instrument used.

In the case of *Dunn v. The State, 2 Ark., 229,* this court approved the exception to the general rule; but it was there held that proof of a distinct crime could not be introduced until there was evidence showing some connection between the different transactions; or such circumstances as will warrant a presumption that the latter grew out of the former. In that event it was held that the circumstances of the former were admissible as tending to discover the *quo animo* of the latter occurrence.

In a later case it was held, that antecedent facts could be proven when they were capable of forming any reasonable presumption or inference in elucidation of the matters involved in the issue.

There are many cases in the reports of this court in which this question has been considered, and evidence of other crimes admitted; but an examination will disclose that in each case the crime proven and that charged were connected in some way clearly manifest. We think there is no case in which the interval of time was nearly so great as in this. *Dunn v. The State, 2 Ark., 229; Austin v. State, 14 Ark., 555; Edmonds v. State, 34 Ark., 732; George v. State, 13 Ark., 236; Melton v. State, 43 Ark., 367; Ford v. State, 34 Ark., 650.*

On the other hand, cases are to be found in our reports in which evidence of other crimes was held incompetent. *Endailey v. State, 39 Ark., 278; Dove v. State, 37 ib., 261.*

It is impossible to say how far back, as respects time, other crimes may be so connected as to be admissible.

When in view of all the facts in this cause, including lapse of time, and no recurring trouble, it does not appear that there is a connection between the crime charged and the other affairs, or that they tend to prove some fact included in it, they cannot be proved.

Billings v. State.

The altercation proven in this case, seems to have arisen suddenly; there is no proof that it did not as quickly pass away. There is nothing in the circumstances attending it to show that it made any lasting impression on the defendant; or that he thereafter cherished any malice or resentment on account of it. If the evidence was competent, it was as tending to prove malice; there is no reasonable presumption or inference, that the two affairs were connected, or that the latter resulted from the former or from the motive prompting the former. As the parties had lived as neighbors for two and a half years, and no recurring evidences of ill feeling were proven, it is more reasonable to say that they had their origin in independent causes.

Regardless of relevancy, this evidence was of a nature damaging to the appellant.

It tended to show that he was a violent, turbulent and lawless man; from which the jury might unconsciously conclude, that the man who committed one would commit another crime. However natural this conclusion, evidence is not proper to establish it. It was competent, if at all, only to show malice; it cannot be said that there was a fair or reasonable inference that it had such tendency.

If it were of a character harmless though irrelevant, we should not reverse for it; but as it is obviously harmful, we cannot so treat it.

The instructions declared the law of self-defense as it has been construed by this court. *Fitzpatrick v. State, 37 Ark., 254-5.*

For the error indicated the judgment will be reversed and the cause remanded.