LONG *v.* STATE AND BLEVINS *v.* STATE.

Crim. 4000-4001

Opinion delivered September 28, 1936.

*Glenn Wimmer* and *W. A. Leach,* for appellants.

*Carl E. Bailey,* Attorney General, and *Guy E. Williams,* Assistant, for appellee.

SMITH, J. Appellants were convicted of receiving stolen property, and seek a reversal of the judgments sentencing each of them to a term of one year in the penitentiary upon the following assignments of error: (1) The admission of certain incompetent testimony; and (2) the insufficiency of the testimony. They were separately indicted and tried, but as the cases are substantially identical they have been briefed and submitted together. Appellants were charged with receiving the same stolen property, consisting of four Jersey heifers, two of them yellow, and fifteen months old, the other two brown, and eighteen months old at the time they were stolen.

The indictments alleged ownership of the stolen property in Bert Holt, who testified that the cattle disappeared from the range near his home the latter part of May, 1935, and had not since been seen by him. It is insisted that the testimony does not sufficiently identify the cattle received by appellants and sold by them as the cattle belonging to Holt which disappeared.

The cattle were stolen by Ralph and Elton Johnson and another young man named Sheppard, all of whom confessed their guilt, and have pleaded guilty to the larceny, and have been sentenced pursuant to their pleas of guilty.

By way of identifying the cattle stolen by the Johnsons and Sheppard, Holt was permitted to testify that he had a conversation about the cattle with Elton Johnson, in the absence of both appellants, and that Johnson admitted stealing the cattle which Holt described as his missing cattle. This testimony appears in the record in each case, and its admission is assigned as error. If it be conceded that the admission of this testimony was error—which we do not decide—no error prejudicial to either appellant was committed, for the reason that Elton Johnson made the same statement as a witness in each trial. Moreover, appellants admit receiving the four head of cattle which Johnson said he had stolen, and the testimony of both the Johnsons at both trials identified the stolen cattle as the property of Holt.

At the trial of appellant Blevins one Buster Haynes was permitted to testify, over Blevins' objection, that about the time Holt's cattle were stolen, Blevins had made him a proposition to pay $8 per head for any cattle witness might steal and deliver to Blevins. This testimony was denied by Blevins, who insists that the testimony was incompetent, as there was no relation between the crime here charged and the one Haynes was solicited to commit. The case of *Mays* v. *State,* 163 Ark. 232, 259 S. W. 398, is cited to sustain the contention that this testimony was erroneous and prejudicial. But such, we think, is not its effect.

In the case just cited the defendant was convicted of receiving stolen goods. The prosecution was permitted to show that at a previous time other stolen property had been found in the possession of the accused. We held that this testimony did not come within any of the exceptions to the general rule under which evidence of another crime may be shown. In so holding we said: "There was no attempt to show that there was any scheme or plan or practice whereby appellant received stolen goods, or that the dresses (the stolen property) were received by appellant pursuant to any scheme or plan; * * * and, in the absence of substantial testimony tending to show that it was appellant's business or prac-

tice to receive stolen goods, this testimony was incompetent and prejudicial.'' But it was there, also, said that ''* * * while the general rule is that evidence of the commission of other crimes is admissible only when such evidence tends, directly or indirectly, to establish the defendant's guilt of the crime charged in the indictment, or some essential ingredient thereof, yet evidence of the commission of other crimes of a similar nature about the same time may be admitted if such testimony tends to show the guilt of the accused of the crime charged by disclosing the criminal intent, guilty knowledge, or identifies the defendant, or is a part of a common scheme or plan embracing two or more crimes so related to each other that the proof of one tends to establish the other.''

It was the theory of the prosecution in this case that appellants were engaged in the business of receiving and selling stolen cattle, and that Blevins had attempted to beguile Haynes into the general conspiracy to steal cattle, in which enterprise such assistance as the Johnsons rendered was essential to the consummation of their general plan.

It is reasonably certain that appellants carried Holt's cattle to Memphis and sold them. Their own testimony leaves no doubt about that fact, and it is equally as certain that the cattle were stolen. Blevins testified that he was in the business of buying and selling cattle and other live stock and transporting them to market to sell for himself and for others, and he admitted that other live stock so disposed of by him had been stolen by the persons who had employed him to transport their stock to market. He testified that he had never hauled any stolen property with knowledge that it had been stolen, and that he was unaware that the four heifers here in question had been stolen.

It was essential to sustain a conviction to show, not only that the cattle had been stolen, but that appellants were aware of that fact when they received the stolen property, and the court so instructed the jury. The testimony of Haynes was competent, therefore, as tending to show that appellants were operating pursuant

to a general plan to receive, transport and sell stolen cattle, pursuant to which plan such assistance was required as Haynes testified he was solicited to render.

The Johnsons testified that they stole the heifers pursuant to their agreement with appellants that the proceeds of the sale, less the expenses thereof, should be equally divided between Sheppard, themselves, and appellants, and that they and Sheppard each received $3 as their part of the net proceeds.

The testimony of appellants was to the effect that appellant Blevins owned a truck which he employed appellant Long to operate. Long was Blevins' employee, worked for a monthly salary, and had no interest in Blevins' business. Blevins bought and sold live stock. He also transported live stock for others to the Memphis market for a charge of 25 cents per hundred pounds. He hauled other freight, and while appellants admit hauling the four heifers to Memphis, where they were sold, they testified that this was done as a carrier for the usual hauling charge, and that they accounted to the Johnsons for the entire net proceeds of the sale, less their hauling charge. If the testimony of the Johnsons is true, there can be no question about the guilt of appellants of the crime of knowingly receiving the stolen property. But it is very earnestly insisted that there is no corroboration of this testimony sufficient to sustain the conviction. It is true, of course, that the receiver of stolen goods and the thief from whom he received them are accomplices within the meaning of § 3181, Crawford & Moses' Digest. *Hester* v. *State,* 149 Ark. 625, 233 S. W. 774. This section provides that a conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and that the corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof.

We think the testimony is sufficient to meet the requirements of this statute. Appellants admit receiving and selling the heifers. It remained, therefore, only to

prove that they had received them knowing they had been stolen. The testimony of Haynes, above discussed, relates to this issue. There was conflicting testimony as to appellants' reputation, and Blevins admitted buying other live stock which later proved to have been stolen, although he denied knowing that fact at the time of their purchase. Appellants admitted that the truck was sent for the heifers after dark, and reached Des Arc about daylight. There was testimony to the effect that it was not unusual to haul live stock at night; indeed, it was preferable to do so in the summer, and appellants testified that after the heifers had been loaded into the truck it was parked on one of the principal streets of Des Arc while appellants were endeavoring to get other freight to haul to Memphis.

The Johnsons testified that they were to receive one-half the net proceeds of the sale. Appellants testified that they hauled the cattle to Memphis as a carrier, and sold them as the agent of the Johnsons. No sales ticket was offered in evidence showing to whom and at what price the heifers were sold. Appellants admit selling the heifers in their own name, but they stated this was the usual method of selling live stock. Blevins' testimony about the settlement with the Johnsons is not entirely clear, but he stated that he paid them "Somewhere around $20." After all expenses, such as sales tax, insurance, yardage, and commission, had been paid, the heifers brought $23, and he got nothing but 25 cents per hundred pounds for hauling them. The prosecution insists that appellants knew the Johnsons did not own any cattle, and Blevins virtually admits having this knowledge. He testified: "I figured the cattle belonged to their folks."

Larceny and receiving stolen property are crimes usually committed as clandestinely as possible, yet neither party to such crimes can be convicted on the uncorroborated testimony of the other. However, this corroboration may be supplied by proof of the acts, conduct or declarations of the party informed against either before or after the commission of the crime. *Stroud*

v. *State,* 167 Ark. 502, 268 S. W. 850. So, here, the facts above recited, including the conduct and admissions of appellants themselves, suffice to furnish the corroboration which the law requires.

As no error appears, the judgments must be affirmed, and it is so ordered.