MOORE ET AL. v. STATE.

4862                                              299 S. W. 2d 838

Opinion delivered March 18, 1957.

W. *Harold Flowers,* for appellant.

*Tom Gentry,* Atty. General; *Paul C. Rawlings,* Asst. Atty. General, for appellee.

GEORGE ROSE SMITH, J. The four appellants, Moore, Boyd, Boone, and Byrd, were convicted of murder in the first degree, committed in the perpetration of robbery, and were sentenced to death. A number of grounds are urged for a reversal of the judgment.

It is first contended that the court should have granted a change of venue. The petition for a transfer of the case did not comply with the statute, in that it was not supported by the affidavits of two credible persons not related to the defendants. Ark. Stats. 1947, § 43-1502. Nor was there any sworn testimony (except the affidavits of the defendants themselves) to show that the minds of the inhabitants of the county were so prejudiced that a fair trial could not be had. *Ibid.,* § 43-1501. The defense offered only the unsworn statements of the four attorneys who were appointed to defend the case. These gentlemen said in substance that they had unsuccessfully attempted to find and employ some one to make a survey of the public feeling in the county. It was their opinion — and this was at least in part a conclusion — that their failure to find some one qualified and willing to make the survey was due to the existence of local prejudice. Newspaper reports of the crime were also introduced in support of the petition, but we do not share counsel's opinion that these reports were biased.

In the absence of competent evidence to establish the existence of prejudice the court did not abuse its discretion in denying a change of venue. Appellants rely solely upon the decision in *Hildreth* v. *State,* 214 Ark. 710, 217 S. W. 2d 622, but that case is quite unlike this one. There the attorneys submitted a sworn statement, and offered to testify, that they had questioned numerous residents of the county and all thought the accused

could not obtain a fair trial, that members of the jury panel had stated they could not try the accused fairly, and that public feeling was so antagonistic that the statutory affidavits could not be had. In the *Hildreth* case the judge refused to hear the proffered testimony and denied the petition on the basis of his personal belief that a fair trial could be had. In reversing that action we did not say that a change of venue should have been granted; we merely held that the court erred in refusing to hear the testimony. That decision does not require a trial court to order a change of venue in the absence of any testimony that the statutory ground therefor exists.

A second contention is that the defendants' confessions were admitted in evidence without other proof that the offense charged had been committed. Ark. Stats., § 43-2115. According to the confessions, the four appellants were riding together in a truck on the morning of May 9, 1956. They picked up the decedent, M. R. Hamm, who was on the highway soliciting a ride to his home a short distance away. Instead of driving Hamm to his home the defendants took him to a lonely spot farther down the lane on which Hamm lived. There the four men beat the decedent with their fists and with a club, knocking him down several times. They took from him a coin purse and a larger purse, together containing $10.11. After dividing the money the defendants drove away rapidly, leaving Hamm lying by the roadside.

Apart from the confessions there is ample evidence to show that the offense was committed. Testimony independent of the confessions indicates that Hamm left his home on the morning of May 9 to go into Texarkana for the purpose of paying a bill and buying medicine. He was last seen several hours later on his way home. Hamm was missing until May 14, when two of the appellants, Boyd and Boone, were questioned in connection with another robbery and admitted the attack upon Hamm. These two showed the officers where the assault had taken place, and Hamm's purse was found by the road there. His body, badly decomposed, was discovered under some brush about two tenths of a mile away.

Later on the other two appellants were arrested and also led the officers to the scene of the attack. In view of the fact that Hamm was missing for five days, that his body was found far from the route he would normally have followed in returning home, and that his purse had been taken, the jury would have been warranted in concluding from this evidence alone that Hamm had been robbed and had not died from natural causes. *Ezell* v. *State,* 217 Ark. 94, 229 S. W. 2d 32, and cases there cited.

The most serious question in the case is whether the court erred in permitting the State to prove that two of the defendants, Boone and Boyd, assaulted and robbed another man, T. B. Fenwick, five days after the attack upon Hamm. Although the two crimes were somewhat similar, in that both victims were picked up while hitchhiking, the record establishes no connection between the two offenses. In charging the jury with reference to the proof of the Fenwick robbery the court gave an instruction similar to that set out in *Scrape* v. *State,* 189 Ark. 221, 71 S. W. 2d 460, by which the jury were told that the Fenwick incident "might be considered by you as showing, if it does show, a scheme and a design on the part of these two defendants in the commission of crime, and for no other purpose."

That a defendant cannot be convicted of one crime by proof that he committed another is a fundamental principle of fairness conceded by every one. Judge Hemingway ably summarized the rule in *Billings* v. *State,* 52 Ark. 303, 12 S. W. 574: "The general rule is well established, in civil as well as in criminal cases, that evidence shall be confined to the issue. It seems that the necessity for the enforcement of the rule is stronger in criminal cases. The facts laid before the jury should consist exclusively of the transaction that forms the subject of the indictment, and matters relating thereto. To enlarge the scope of the investigation beyond this would subject the defendant to the dangers of surprise against which no foresight might prepare and no innocence defend. Under this rule it is generally improper

to introduce evidence of other offenses; but if facts bear upon the offense charged, they may be proven, although they disclose some other offense. The test of admissibility is the connection of the facts offered, with the subject charged.''

There are, of course, innumerable situations in which proof of other conduct on the part of the accused is relevant to the offense charged and is therefore perfectly competent, even though it also shows the commission of another crime. Many such situations were discussed in *Alford* v. *State,* 223 Ark. 330, 266 S. W. 2d 804, and need not again be reviewed. The question here is whether evidence of the Fenwick robbery was admissible to show a scheme and design on the part of Boone and Boyd in the commission of crime.

Our many cases admitting evidence to prove design fall naturally into two classes, corresponding to the two senses in which the word design is commonly used. First, design may simply indicate intent or conscious knowledge, as when one says that a thing was done by design rather than by accident or mistake. This usage is common in cases involving conduct which may be either innocent or criminal, depending upon the accused's guilty knowledge or intent. A typical instance is *Johnson* v. *State,* 75 Ark. 427, 88 S. W. 905, which involved a charge of larceny growing out of an elaborate confidence game. In holding that proof of similar conduct was admissible to show design (in the sense of intent), we said: ''The general rule, of course, is that one crime cannot be proved as tending to prove another; but when the question of intention in the performance of acts becomes material, then similar acts which tend to show whether an innocent or criminal intent is present become admissible. This is frequent in cases of uttering forged instruments, passing counterfeit coins, receiving stolen property, and is applied in larceny as well as other crimes. 1 Wigmore, Evidence, § 346. The question was recently considered in this court, and this rule announced: 'When there is a question as to whether or not the crime charged was by accident or mistake, or

intentional and with bad motive, the fact that such act was one of a series of similar acts committed by the defendant is admissible, because it tends to prove system and show design.' *Howard* v. *State,* 72 Ark. 586 (82 S. W. 203).'' Among other cases using the word design to mean intent or guilty knowledge are *Ross* v. *State,* 92 Ark. 481, 123 S. W. 756, and *Norris* v. *State,* 170 Ark. 484, 280 S. W. 398.

It is quite apparent that cases such as these do not support the State's position in the case at bar. The only evidence that connects these appellants with Hamm's death arises from their admissions and confessions. That proof, which must have been accepted by the jury, shows that these men beat their victim for the avowed purpose of robbing him. The question is not that of the intent with which Hamm was attacked. Rather, it is whether the attack took place at all; if it did, it was unquestionably done with criminal intent and constituted robbery. True, the appellants insisted in their confessions that they did not intend to kill Hamm, but that issue was eliminated by an instruction to the effect that a specific intent to take life is not necessary if the life is unlawfully taken in the perpetration of robbery.

In its other sense the word design means a plan of action formed in the mind and to be carried out in the future. Proof of design in this sense is undoubtedly competent, for the fact that a crime was planned in advance tends to show that it was actually committed. ''The presence of a design or plan to do or not to do a given act has probative value to show that the act was in fact done or not done. A plan is not always carried out, but it is more or less likely to be carried out.'' Wigmore on Evidence, (3d Ed.), § 102; see also § 300. We have approved this principle on many occasions. For example, in a prosecution for murder in the perpetration of robbery it was proper for the State to prove that three robberies were planned in advance, although only one was attempted. *Ford* v. *State,* 34 Ark. 649. Again, in a prosecution for receiving stolen cattle the State could prove that the accused was engaged in that

business and had offered to pay a witness $8 a head for any cattle that he might steal and deliver to the accused. *Long* v. *State,* 192 Ark. 1089, 97 S. W. 2d 67. Other cases in point include *Nichols* v. *State,* 153 Ark. 467, 240 S. W. 716; *Middleton* v. *State,* 162 Ark. 530, 258 S. W. 995; cf. *Jenkins* v. *State,* 191 Ark. 625, 87 S. W. 2d 78.

It is likewise apparent that the proof of the Fenwick robbery does not come within the scope of this second aspect of design. The Fenwick incident occurred five days after Hamm was killed; it has no tendency to show that the robbery of Hamm was planned in advance. There is actually no evidence of an independent plan, formed ahead, for the attack upon either victim.

It is plain enough that the robbery of Fenwick was not competent to show design either in the sense of criminal intent or in the sense of a premeditated scheme. If the jury could not draw either of those permissible inferences from proof of the subsequent crime, of what value was the testimony to them? The only possible answer is that this proof established the fact that Boone and Boyd were criminals and were therefore likely to be guilty of the offense for which they were being tried. In short, the jury were afforded the opportunity of finding Boone and Boyd guilty of murder upon the basis of proof that they had committed robbery on another occasion.

We have in our reports more than a hundred decisions on this general subject. It may be conceded, as we indicated in the *Alford* case, *supra,* that these cases cannot all be harmonized with the principles stated there and here, or, indeed, with one another. The subject is one in which confusion is especially apt to arise. As we have seen, when the offense involves conduct that may be innocent or guilty, depending upon intent, it is proper for the State to offer evidence of similar conduct on the part of the accused in order to establish the necessary intent. But once the statement has been made that evidence of other offenses is admissible to

show intent, the rule may be inadvertently applied in situations to which it is really not applicable.

Perhaps the most conspicuous departure from the general rule occurred in *Scrape* v. *State, supra.* There, in a prosecution for the robbery of a filling station, the State was allowed to prove an attempted robbery of another filling station on the following night. We held the evidence admissible, citing *Wilson* v. *State,* 184 Ark. 119, 41 S. W. 2d 764, and *Sibeck* v. *State,* 186 Ark. 194, 53 S. W. 2d 5. It is at once apparent that neither decision supports the principal case, for both the *Wilson* case and the *Sibeck* case involved conduct that might have been innocent or criminal, according to intent. Thus a sound rule of law was lifted from its context and by oversight applied to a different fact situation.

It is easy to demonstrate that isolated cases such as the *Scrape* decision are out of harmony with the great majority of our opinions on the subject. A few examples will suffice. In *Wood* v. *State,* 157 Ark. 503, 248 S. W. 568, we held that evidence of a prior charge of robbery was inadmissible in a later prosecution for robbery. This language was quoted with approval by Judge Frank Smith: "On the trial of one indicted for robbery, as in the case of other criminal prosecutions, the general rule is that evidence is not admissible which shows, or tends to show, that the accused has committed a crime wholly independent of the offense for which he is on trial. Under this rule, therefore, evidence of another separate and distinct robbery, committed the preceding night, by the defendant upon another person, in the same neighborhood, in much the same way, is not admissible in evidence against one who is being tried for robbing a pedestrian on the street in a city by pointing a pistol at him." It will be observed how precisely this language fits the case at bar.

That two unconnected offenses do not themselves establish a scheme or design was unequivocally decided in *Yelvington* v. *State,* 169 Ark. 359, 275 S. W. 701. There the accused was charged with the theft of mules. We reversed the judgment because the State had been

allowed to prove that when the stolen animals were found in the accused's possession he also had in his possession some stolen sets of harness. Chief Justice McCulloch analyzed the issue in detail: "We are of the opinion that it was error to admit the testimony of other thefts and appellant's possession of the other property which had been stolen. This court has adopted a very liberal rule in declaring exceptions to the general rule against proof of other crimes. We have said that proof of other crimes of a similar nature, shown to have been committed about the same time, may be admitted as disclosing the good faith or criminal intent of the accused, or to prove a scheme or plan or system of committing crime, or to show a connection between that particular crime and the one under investigation. (Citing seven cases.) The proof in the present case does not, however, fall within the exception. The proof of the theft of the harness had no connection with the alleged theft of the mules. It occurred at a different time and place, and under those circumstances it had no tendency to establish a plan or scheme which included the theft of the stock, and formed no connection with that incident. The court admitted the testimony on the theory that it tended to establish the good or bad faith of the accused, but we do not think that it was proper for that purpose. The assignment falls squarely within the decision of this court in the recent case of *Mays* v. *State,* 163 Ark. 232 [259 S. W. 398]. In that case the defendant was convicted of the offense of receiving stolen property, and the State proved the theft of a valise containing woman's apparel, that two of the dresses were found in the possession of appellant, and that other stolen property had also been found in his possession. We held that the testimony was incompetent, and the same reasoning calls for the exclusion in the present case of testimony relating to other thefts. The fact that the stolen harness was found in appellant's possession at the same time that the mules were found there does not relieve the testimony of the objection that it relates to another crime."

The charge in *Williams* v. *State,* 183 Ark. 870, 39 S. W. 2d 295, as in the case before us, was murder com-

mitted in the perpetration of robbery. In holding that the admission of testimony concerning other offenses, including robbery, was prejudicial we said: "There is no connection between these various crimes and the killing of McDermott, and the only, and the necessary, effect of this testimony was to show the desperate character of appellant as a confirmed criminal. There was no question as to the purpose for which appellant held up Chance, and that he robbed him, and that while still at the scene of the crime he killed the officer who attempted to arrest him."

There are many other holdings to the same effect. Recent thefts of saddles or bridles cannot be shown in a prosecution for the theft of horses. *Dove* v. *State,* 37 Ark. 261; *Endaily* v. *State,* 39 Ark. 278. Where the accused was charged with assault with intent to kill, after he had broken into a woman's room with a pistol, the State could not show two other occasions on which he had broken into women's rooms with a pistol. *Morris* v. *State,* 165 Ark. 452, 264 S. W. 970. A separate attempt to rape cannot be proved in a prosecution for rape. *Alford* v. *State, supra.* Evidence of the theft of other cars is inadmissible upon a charge of larceny of an automobile. *Rhea* v. *State,* 226 Ark. 664, 291 S. W. 2d 521. See also *Davis* v. *State,* 170 Ark. 602, 280 S. W. 636.

Thus we are firmly committed to the universally accepted rule that evidence of other offenses is inadmissible when it has no permissible relevancy to the crime at issue and can only serve the purpose of persuading the jury that since the accused has been guilty of similar offenses he is therefore likely to be guilty of the crime charged. It follows that the introduction of proof concerning the Fenwick robbery constituted prejudicial error as to Boone and Boyd.

Whether the error was also prejudicial as to Moore and Byrd, who had no part in the later crime, is apparently a question of first impression in this state. In admitting proof of the Fenwick robbery the court instructed the jury that the testimony could not be considered as to Moore and Byrd. It is of course possible

that the jury were able to obey the court's admonition and were not adversely influenced as to Moore and Byrd. On the other hand, the admission of the Fenwick proof was prejudicial as to Boone and Boyd, and the fact that the jury found all four defendants guilty and imposed the same penalty in every case indicates that the prejudicial effect of the testimony may have carried over to the other two defendants.

In the particular circumstances of this case we think the error was prejudicial to all four defendants. It is quite possible that if the attack on Fenwick had been mentioned only casually in the course of this prolonged trial, its effect as to Moore and Byrd would have been overcome by the court's admonition to the jury. That, however, is not the situation at all. The record discloses beyond question that the State undertook to, and did, prove the Fenwick robbery in every detail and beyond a reasonable doubt. Before it had even been shown how Hamm met his death Fenwick was called as a witness and described at length how Boone and Boyd beat him with a claw hammer and forcibly took his wrist watch and a wallet containing an 1891 silver dollar. Seven law enforcement officers testified about the investigation of Hamm's death; all of them except a police photographer also testified about the Fenwick crime. The wrist watch had been found in Boone's cap and was introduced in evidence. The silver dollar was traced, recovered, identified, and received in evidence. The officers described their search for the hammer and accounted for their failure to produce it as well. A substantial portion of the trial was devoted to the State's meticulous proof of the later crime, and it was mentioned several times in the prosecution's arguments to the jury. It is fair to say that the proof of the attack upon Fenwick was even more conclusive than the proof of that upon Hamm, for the latter involved circumstantial evidence while the former was proved by direct testimony.

"Where the effect of an erroneous instruction or ruling of the trial court might result in prejudice, the rule is that the judgment must be reversed on account of such ruling, unless it affirmatively appears that there

was no prejudice." *Crosby* v. *State,* 154 Ark. 20, 241 S. W. 380. We cannot conscientiously and sincerely say that the court's admonition eliminated the possibility that prejudice to Moore and Byrd resulted from the voluminous testimony relating to the brutal attack upon Fenwick. All four of the defendants had acted in concert in beating and robbing Hamm. When it was shown that two of these men also beat and robbed Fenwick, it would be natural for the jury to conclude that the other two would have joined in the attack had they been present. When the matter is thus open to doubt we are not warranted in holding that the record affirmatively shows the absence of prejudice.

Reversed.

Mr. Justice HOLT joins in the opinion except with respect to the trial court's denial of a change of venue; on this point he agrees with the concurring opinion of Mr. Justice McFADDIN. The Chief Justice and Mr. Justice MILLWEE would affirm the judgment.

ED. F. McFADDIN, Associate Justice (concurring). I concur in the reversal of this case, but for reasons entirely different from those stated in the majority opinion: hence this separate concurrence.

I. *Proof Of Acts Of A Similar Nature.* The majority is reversing the judgment because of the admission of the testimony regarding the attack on Mr. Fenwick; and the majority says that any admission of testimony regarding the Fenwick incident violates the holding of this Court in *Alford* v. *State,* 223 Ark. 330, 266 S. W. 2d 804. I dissented in the Alford case; and I maintain that the majority opinion in the present case does not answer the cases cited in my dissent in the Alford case. I think the Trial Court was correct in the case at bar in allowing the testimony regarding the Fenwick incident; and I would not reverse the judgment for that reason.

II. *Change Of Venue.* My vote to reverse the judgment in the case at bar is because of the failure of the Trial Court to grant a change of venue. I think

the matter of change of venue falls within the purview of our holding in *Hildreth* v. *State,* 214 Ark. 710, 217 S. W. 2d 622.

The situation in the case at bar needs to be stated in some detail regarding the motion for change of venue. When the defendants were unable to employ counsel, the Court appointed four splendid lawyers of the Texarkana, Arkansas bar to represent the defendants, jointly and severally. These attorneys were Dennis K. Williams, Joe Rosenblum, Van Johnson and William H. Arnold III. Each of these attorneys served, as court-appointed counsel, without compensation of any kind, and exemplified the fine ethics of the legal profession in acting as officers of the court in such capacity.[1] The Trial Court advised the four attorneys that they would work together, but each would take the responsibility for the individual interest of one particular defendant. The feeling against these four defendants was so high in Miller County that the defendants were kept in another county and the place of confinement was kept secret. The defendants were at one time confined in the jail in Hempstead County and at one time they were placed in the State Penitentiary for safekeeping. When the attorneys desired to consult with their clients, they were taken to the place where the defendants were confined, rather than having the defendants brought back to Miller County. All of this is reflected in the record.

The attorneys filed a petition for change of venue, which reads:

"Come the defendants, James E. Moore, James Boyd, Rogers Boone and Willie Henry Byrd, jointly and severally, and respectfully petition the Court for a change of venue and state:

"This petition for change of venue is made jointly and severally by each and all of us.

---

[1] When the defendants—or someone for them—employed present counsel to perfect this appeal, the Court released the court-appointed counsel.

"We are Negroes and are charged with robbing and murdering M. R. Hamm, an aged white man. Almost immediately upon being arrested in Miller County, Arkansas on the 15th day of May, 1956, we were all taken to the Clark County Jail in Arkadelphia, Arkansas, where we remained several days, and thereafter we were transferred to the Arkansas State Penitentiary, where we remained several days, and thereafter we were transferred to the Hempstead County Jail at Hope, Arkansas, where we remained several days. We were advised by the officers we were taken to these places for safe keeping.

"When we were arraigned the first time, we were brought secretly by the Officers from the Hempstead County Jail at Hope, Arkansas, to the Miller County Jail at Texarkana, Arkansas. Attorneys were appointed for us and after brief consultation with one of the attorneys, we entered a plea of not guilty and were immediately taken back to the Hempstead County Jail at Hope, Arkansas; during the meantime, an amended information was filed against us and we were again secretly brought to Texarkana, Arkansas, and arraigned and quietly placed in the Miller County, Arkansas Jail, at Texarkana, Arkansas.

"Upon inquiry from the officers as to why we were taken away from Miller County, Arkansas, we were advised the feelings in the minds of the inhabitants of Miller County, Arkansas were so prejudiced against us that there was great danger of mob violence.

"The newspapers of Texarkana, Arkansas-Texas published that we had confessed to killing M. R. Hamm, when in truth and in fact, no such confession or statement was made by either or all of us; this erroneous publication caused the minds of the inhabitants of Miller County, Arkansas to become so prejudiced against each and all of us that we cannot receive a fair and impartial trial in said county.

"We and each of us believe that the minds of the inhabitants of Miller County, Arkansas are so prejudiced against us that each and all of us believe that a

fair and impartial trial cannot be had in Miller County, Arkansas.

"Wherefore, James E. Moore, James Boyd, Rogers Boone and Willie Henry Byrd, jointly and severally, pray the Court order removal of this criminal cause to some other county for trial."

The petition for change of venue was not supported by the affidavits of witnesses, as required by law, for the admitted reason that the attorneys appointed by the Court stated that they were unable to obtain any persons to make a survey of Miller County so as to be prepared to testify in the trial. The attorneys published a notice in the Texarkana Gazette for three days, asking that anybody who wanted to obtain employment in making a survey would contact one of the attorneys. Any person answering the notice promptly refused when he found out what kind of work it was. The attorneys then contacted the Texarkana Employment Office, and again, were unable to obtain anyone who would do the work. Here is the statement that Mr. Dennis K. Williams, court-appointed counsel, made to the Court in regard to the petition for change of venue:

"My name is Dennis K. Williams, and I am one of the attorneys appointed to represent these defendants; and in the very early stages there, I suggested to the Court and also to the Prosecuting Attorney's office that we were going to try to get a change of venue, and during that time, why, I tried to contact people, too, that would make a survey of the county to find out the feeling of the people, and I was able to get one party that said he would do it. And as late as last Thursday, why, that party said he had made a survey of the county and that all that he contacted said the "niggers" ought to be burned or hung; and that party was also to come to my office this past Saturday morning, and in no event later than Monday morning, and I have not even seen the gentleman. I saw him Friday up here at the Courthouse, but I have not seen him since.

"Another man that I contacted said he would give me his answer Thursday morning — this past Thurs-

day morning — and he met us up here at the Court-house, and we four attorneys talked with him in the li-brary, and told him what we would need and all, and that afternoon, why, he called me and said that he had talked with his wife, and his wife said he couldn't have any part to do with it.

"As Mr. Johnson stated, some of these people, and my good friends, said they would not mind helping me, but this was a horse of a different color, and they re-fused to partake in it. And as a last resort, we thought we would advertise in the paper and I believe I can state kind of the sum and substance of the ad; I wanted credible persons to make a survey of Miller Coun-ty on a controversial issue, and we didn't even sign that; we gave Mr. Van Johnson's room number in the State National Bank, and as he has told you about the number of people that have called; and it was impos-sible for us to get people whom I think to be credible persons to make a survey of the county at this time, and I believe if public opinion subsides some in a few months, we might be able to get this. I know there has been diligence on the part of us attorneys. We have conferences on the average of sometimes one and two times a day. I mean conferences where we were all to-gether, and telephone calls that have been made. Hard-ly a day goes by that I don't call one of them or they don't call me about this matter. We have just had difficulty; in fact, we have not been able so far to get anybody to make a survey of the county for us."

This is not the ordinary case of paid counsel for a defendant making a statement as to inability to comply with the Statute. We have here the case of court-ap-pointed counsel informing the Court that the sentiment in the County was of such a fever that people were unwilling to make a survey, even when offered em-ployment. These four fine lawyers, officers of the Court, did everything they could to comply with the formalities of the Statute; and the change of venue should have been granted because the feeling in the County was so strong that the defendants had to be kept out of the County for safekeeping; and no person in

the County was willing to come into the Court and testify as to the feelings of the populace of Miller County. It is putting form before substance to say that the petition for change of venue should have been refused because the legal formalities were not complied with.

I submit that the case of *Hildreth* v. *State,* 214 Ark. 710, 217 S. W. 2d 622, points the way to the necessity of a change of venue in the case at bar. In the Hildreth case, in speaking of the compliance with the Statute (§ 43-1502 regarding two electors), we said:

"The statute is evidently based on the premise that the accused is entitled to a change of venue when hostile public sentiment makes an impartial hearing impossible. It would be patently illogical to grant the petition when affidavits are obtainable, but to refuse relief when public feeling is so antagonistic that the affidavits cannot be had."

In the case at bar the public sentiment, as shown by the court-appointed counsel, was so antagonistic that people refused to make the affidavits or make the survey. Therefore, I submit that the change of venue should have been granted. It is for this reason alone that I vote to reverse the conviction.

CARLETON HARRIS, Chief Justice (dissent). While it forms no part of the reasons for this dissent, I should like to first express my disapproval of the law as established in the case of *Alford* v. *State,* 223 Ark. 330, 266 S. W. 2d 804. I consider that no better evidence can be presented to indicate one's intentions in a particular instance, than to establish the same or similar acts upon other occasions evidencing the same intention. I think this particularly true in crimes involving sex, as the lust of the perpetrator of a sex crime is only temporarily satiated after the crime is consummated. The urge that prompted the dastardly act will come again and again, and will be acted upon under what is deemed to be proper conditions and circumstances.

However, I recognize that the rule announced in the *Alford* case is the established law in this state until over-

ruled, and my dissent in the case at Bar is based upon the fact that I consider the evidence of the Fenwick robbery to be admissible *despite* the rule in *Alford* v. *State, supra.* Quoting from the *Alford* case, which in turn quotes from an earlier case, *State* v. *Dulaney,* 87 Ark. 17, 112 S. W. 158; ''Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial.''

The information in this case charged defendants with the crime of murder in the first degree, committed while perpetrating the crime of robbery. Under said information, it was necessary that the State prove that defendants robbed or attempted to rob the deceased. The most forceful evidence presented by the State was the confession of each of the defendants that they robbed Hamm. This, of course, standing alone and uncorroborated, was insufficient to establish that fact. It was therefore necessary that the State offer additional proof of the robbery. The evidence corroborating the robbery is thin indeed. Hamm's empty pocketbook was found near the scene of the crime, and his wife testified that he left home for the purpose of going to town to pay the light bill and get some medicine, but she did not testify that he had any money in his pocketbook. *There is practically no evidence in the record, with the exception of the confessions, that Hamm was robbed,* or that the assault on him was made by the defendants in an attempt to rob him.

The testimony of Fenwick established that within a few days (five) of the death of Hamm, two of the defendants (Rogers Boone and James Boyd) pulled up

¹ It was while the officers were questioning these two defendants about the Fenwick robbery that they learned of the robbery of Hamm, and were taken by Boone and Boyd to the location where Hamm had been beaten and left.

where he was waiting for a bus, and said, "Let's go to Hope." He accordingly got in with them. "The biggest boy suggested that we stop for a nature case, and we all got out, and when we started to get back in, he reached and came out with a claw hammer and said 'We ain't going to Hope, but you're going to Hell right quick'." Fenwick stated that he was struck and hit with the claw hammer, and fell down. The two men then took his wrist watch and pocketbook. About that time, one of the defendants saw someone coming and started off, but the other said "Wait, I've got to kill this old son-of-a-bitch yet," and kept hitting at him until his companion started driving away. Then he ran and caught the truck.

This evidence, in my opinion, was certainly admissible against these two defendants as being directly related to the issue of intent; in other words, it is "independently relevant" to the main issue — relevant in that it is evidence to prove a *material* point in the case at Bar, *e. g.*, that defendants killed Hamm while committing or attempting to commit the crime of robbery. Of course, the evidence would not be admissible simply to show that they were evil men. In the *Alford* case, upon which the majority rely, the ravished witness was still alive, and present in Court testifying that she had been raped. Therefore, as set out in that opinion, there was no need of further evidence to show Alford's intent, for no one would contend that he intended something other than rape. I would likewise agree that if Hamm were alive and testifying he had been robbed by the defendants, evidence of the Fenwick robbery would be inadmissible under the rule herein discussed. But, to the contrary, the victim is dead, and so cannot appear and testify as to what happened, and I repeat, there is no substantial evidence[2] (other than confessions) to

---

[2] I emphatically disagree with the majority that the fact a man is missing for five days, his body found on a route not normally taken in going home, and his empty purse found on the side of the road two-tenths of a mile from the body, is such evidence, standing alone, as would warrant a jury in concluding that that individual had been robbed.

establish that the deceased was killed while the defendants were perpetrating the crime of robbery.

The information does not allege, nor is there any evidence in the record to establish that defendants had a grudge against deceased, or had previously planned to kill him, and the State's first degree murder allegation must accordingly be sustained by proof of the robbery. The Court cautioned the jury that this evidence could only be used against the two defendants involved, and further, that it was only relevant as showing a general scheme or design. Such evidence has frequently been admitted for such a purpose. In *Casteel* v. *State,* 205 Ark. 82, 167 S. W. 2d 634, the defendant was tried for the crime of arson, it being alleged that he did "feloniously aid, abet, assist, and advise and encourage the burning of a  *  *  * Pontiac automobile  *  *  * property of Morris Henson, Bert Casteel and Porter Wilson Finance Company  *  *  *''. Among grounds for reversal, appellant urged that the trial court erred in permitting testimony relating to previous transactions of insurance on other automobiles in which appellant was interested, and which had been burned. Quoting from the Opinion: "Finally appellant urges that the trial court erred in permitting witnesses, J. O. Langley and Rellis Garrett, to testify as to transactions of insurance on other automobiles, and as to the alleged burning of these cars. The testimony is to the effect that this testimony concerned other automobiles, in which appellant was interested, which were insured and burned within a period of time shortly before the one in question here, and closely connected with its burning. This testimony, under proper instructions from the Court, was permitted to go to the jury solely for the purpose of determining appellant's motive, scheme, design or intent, and we think it was properly admitted.''

Again, in the case of *Davis* v. *State,* 182 Ark. 123, 30 S. W. 2d 830, Davis was convicted of the crime of murder, and sentenced to death. The evidence showed that he and two others went to the place of business of J. J. Weed, a merchant in North Little Rock, and

while engaged in an attempt to rob Weed, killed him. A certain Joe Lee testified that on the same night, and within a few blocks of Weed's place of business, he was held up by three men and robbed. He identified Davis as participating. This testimony was admitted over the objections of the defendant. The Court admonished the jury that the testimony could be considered only for the purpose of identification and upon the question of "* * * intent of entering Weed's place of business * * *". Quoting from the late Justice Smith: "The indictment alleged that Weed was killed in an attempt to rob him, and it was this unlawful intent which made it unnecessary for the State to prove the deliberation and premeditation which would be required to establish murder in the first degree. * * * *It was essential for the State to show that appellants were in Weed's place of business for the purpose of committing the crime of robbery.* * * *" (Emphasis supplied.) "The testimony was, therefore, competent to show the business in which appellants were engaged that night, and the probable purpose for which they went to Weed's place of business thereafter."

The fact that the offense admitted in evidence occurred subsequent to the crime for which appellants are being tried is of no effect. *Scrape* v. *State,* 189 Ark. 221, 71 S. W. 2d 460. This case, incidentally, seems to be on "all fours" with the case at Bar, and I find absolutely no distinction in the evidence that was admitted there of a similar offense, and the evidence which was herein admitted, and which the majority say constituted reversible error. Scrape was convicted of the crime of robbery of a filling station in Little Rock, which occurred on November 9, 1933. During the trial, and over objections, L. R. Biggs, operator of another filling station in Little Rock, was permitted to testify that appellant and two others had attempted to rob him on November 10, the day following the date of the robbery for which he was on trial. In this connection the Court gave to the jury, over appellant's objections and exceptions, the following instruction: "The defendant is being tried alone for the crime of robbery. The

State has attempted to show by testimony that this defendant engaged in an attempted crime of robbery on the night following the date of the crime for which he is now being tried is alleged to have been committed. If you should believe from the evidence that the defendant did attempt to commit robbery on the night following the alleged crime for which he is being tried, it might be considered by you as showing, if it does so show, a scheme and a design on the part of the defendant in the commission of crime, and for no other purpose; and, even though you should believe him guilty of attempted robbery committed on the day following the day of the robbery for which he is now being tried, yet that would not be sufficient to warrant his conviction on the charge for which he is now being tried unless you believe he was guilty on this particular charge beyond every reasonable doubt.'' This instruction was approved by this Court, and in the language of Justice McHaney: ''* * * we have many times held that evidence of similar crimes closely connected with the crime charged, is admissible, not only to show knowledge or intent, but to show a system, plan, or scheme of conduct on the part of the accused. * * *''

The majority do not attempt to reconcile the present holding with the *Scrape* case other than to say that it was a ''conspicuous departure from the general rule'', an isolated case, and actually occurred because of ''oversight''. Yet the majority do not overrule the *Scrape* decision.

It appears to me that the law relating to the admission of similar offenses in the trial of a particular cause, is now so highly technical and apparently conflicting, that lawyers and judges, in trying to distinguish between the various cases, can only reach a complete state of bewilderment. The net result will be that trial courts will never permit the introduction of evidence of similar crimes committed by a defendant which might well tend to prove intent, scheme, or design in the case under submission. I strongly feel such evidence to be invaluable in the trial of a criminal case.

For the reasons herein set out, I am of the opinion that the testimony relating to the Fenwick robbery was competent and relevant evidence, and the Court did not err in admitting same. I accordingly respectfully dissent to the views of the majority.

Justice MILLWEE joins in the dissent.